UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RAFAEL LEE
                                                            :
                    Plaintiff,              12 Civ. 4662 (LGS)
     - v -
                                                            :
KUCKER & BRUH, LLP and
ALAN D. KUCKER,
                                                            :
                    Defendants.
                                                            :
------------------------------------------------------------X

## DEFENDANTS' STATEMENT
## PURSUANT TO LOCAL CIVIL RULE 56.1 OF MATERIAL
## FACTS AS TO WHICH THERE ARE NO TRIABLE ISSUES

Defendants Kucker & Bruh, LLP ("K&B") and Alan D. Kucker, Esq. ("Kucker") (together, the "Defendants") by their undersigned attorneys Kucker & Bruh, LLP, respectfully submit this Statement Pursuant to Local Civil Rule 56.1 in support of their motion for an order pursuant to Fed. R. Civ. P. 56 granting summary judgment (i) dismissing the plaintiff's complaint commencing this case (the "Complaint") and all claims asserted against the Defendants therein by the Plaintiff Rafael Lee ("Lee" or the "Plaintiff") and (ii) affording the Defendants such other and further relief as the Court may deem just and proper (the instant "Motion"), hereby state and set forth the uncontroverted material facts as to which there are no triable issues in this case, as follows:

1. In October, 2011, the Plaintiff was served with a document titled "Three Day Notice" dated October 18, 2011 from his landlord Woodfin Realty Corp. ("Woodfin"), signed by Rebekah Ballard as agent for Woodfin, care of its managing agent Mall Properties, Inc. ("MPI") located in New Albany, Ohio, stating that he owed $1,012.47 in unpaid rent due (the "MPI

Demand"). Transcript of Deposition of Rafael Lee ("Lee Tr.," a copy of which is annexed to the Zelman Declaration as Exhibit C) 11 – 13; Declaration of Abner T. Zelman ("Zelman Decl."), Ex. C.

2. The Plaintiff, regarding the MPI Demand as being in error, sought legal assistance and was referred to Paris R. Baldacci, a law professor at the Cardozo School of Law and Director of the Cardozo Housing Rights Clinic. Mr. Baldacci sent a letter dated November 1, 2011, to Ms. Ballard at MPI advising her in relevant part that the Plaintiff was the recipient of a Senior Citizens' Rent Increase Exemption ("SCRIE") which was not being properly credited by MPI, that Plaintiff had in fact timely paid all rent that was owed by him, that therefore the MPI Demand was erroneous and should be withdrawn, and enclosing a copy of the New York City Department of Finance's Order of Tax Abatement Adjustment providing for Plaintiff's SCRIE benefits, and a stipulation of settlement dated February 23, 2010 withdrawing a prior non-payment proceeding that had been erroneously brought by Woodfin against the Plaintiff conditioned upon Woodfin's refund of a prior rent overpayment, and the payment of $750.00 in attorney's fees to Plaintiff's then attorney (the "Baldacci Letter"). Ms. Ballard at MPI replied to the Baldacci Letter by her e-mail to Mr. Baldacci dated November 30, 2011, acknowledging that the MPI Demand had been in error, and stating "[p]lease be advised that I have made the necessary adjustment per the documentation you provided." Lee Tr. 14 – 31. Zelman Decl., Ex. C.

3. Rebekah Ballard left MPI in January 2012, was replaced by Sara Bennet, and did not advise Joe Lopez, the MPI New York residential portfolio manager beginning in December, 2011, who was in charge of the Plaintiff's account, of MPI's prior erroneous rent demand to the Plaintiff. Transcript of Deposition of Joe Lopez ("Lopez Tr.," a copy of which is annexed to the

Zelman Declaration as Exhibit D), 47-48, 85-86; Zelman Decl., Ex. D.

4. MPI initiates proceedings to enforce tenant payment by running a delinquency ledger generated from the accounting ledger that is run and reviewed by the accounting department in the main office in Ohio. The Ohio office then transmits said statement to the attorneys to commence a non-payment case. Lopez Tr. 21-22; Zelman Decl., Ex. D.

5. A delinquency ledger is generated and reviewed by the MPI Ohio office on a monthly basis with respect to all tenants who are delinquent in payment of rent. The portion of such delinquency ledger regarding the account of the Plaintiff, Rafael Lee, tenant of Apartment 3D at 810 West 183rd Street (a building owned by Woodfin Realty Corp. and managed by MPI) showing an overdue balance in the amount of $1,125.23 due and owing on said account, titled "Aged Delinquency Report," dated March 14, 2012 (the "MPI Delinquency Report," a copy of which is annexed to the Zelman Declaration as Exhibit E), was transmitted by the Ohio office by e-mail to Mr. Lopez and to K&B. (The itemization contained in the MPI Aged Delinquency Report represented that the Plaintiff owed eight (8) monthly fuel surcharges in the amount of $38.07 per month from August 2011 through March 2012 totaling $304.56, plus $30.37 due in respect of the February, 2012 rent, and $790.30 in respect of the March 2012 rent, for an aggregate total of $1,125.23.) The Ohio office and Mr. Lopez jointly made the determination of which delinquent accounts would be referred to attorneys to commence suit. MPI's policy was to commence suit where the amount owed was equal to or greater than one month's rent. The determination by MPI to refer the Plaintiff's account to K&B to commence suit was based solely upon the information set forth in the MPI Delinquency Report, without reference to any other documents. Lopez Tr. 55-69, Ex 3; Zelman Decl., Exs. D, E.

6. At the time the Plaintiff's account was referred to K&B, Mr. Lopez was not aware that

3

the Plaintiff's legal rent was limited to the amount authorized by his SCRIE certificate. The Plaintiff's SCRIE status had not been communicated to anyone else. Lopez Tr. 83-85. Zelman Decl., Ex. D.

6. On or about March 14, 2012, K&B received the MPI Delinquency Report by e-mail from MPI. Prior to that date, K&B had no prior involvement in, or knowledge of, the Plaintiff or the premises at which he lived, and thus as of March, 2012 knew only the information contained in the MPI Delinquency Report – which contained no information about the Plaintiff's age, status, rental history, or the fact that the Plaintiff was the recipient of a rent subsidy under the City of New York's Senior Citizen's Rent Increase Exemption ("SCRIE") program. Transcript of Deposition of Alan D. Kucker ("Kucker Tr.," a copy of which is annexed to the Zelman Declaration as Exhibit F), 45-47; Zelman Decl. Ex. F.

7. The standard procedure utilized by K&B with respect to residential non-payment proceedings is that when K&B is provided with information regarding a tenant's non-payment of past-due rent, in a written statement or printout prepared from the client's regularly maintained business records, it is referred to a legal assistant who, under the direction of Alan Kucker, prepares the statutory three day rent demand to the tenant that is the prerequisite to the commencement of a non-payment proceeding, if the rent remains unpaid by the end of the notice period provided for in the demand (a "Three Day Notice"), which is then served upon the tenant by a process server at the subject premises. Such Three Day Notice contains the tenant's name, address, apartment number, an itemized statement of the amount of past due rent that the landlord claims the tenant owes, and the notice required to be given pursuant to 15 U.S.C. §1692(g) of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (the "FDCPA"), advising the tenant of his right, within 30 days of being served with the Three Day Notice, to give written notice disputing and demanding

verification of the amount owed (an "FDCPA Verification Demand"), pursuant to which K&B would be required to provide the tenant with written verification of same (an "FDCPA Verification"), or take no further action to collect it. At the end of the notice period provided for by the Three Day Notice, K&B then confirms with the client whether the past-due rent has been paid. If it has not by then been paid, K&B prepares a notice of petition and petition commencing a summary eviction proceeding for non-payment of rent which is then served upon the tenant by a process server at the subject premises. In cases where, pursuant to the FDCPA Dispute Notice, the tenant disputes the amount owed, K&B then confirms the amount of the debt claimed by the client. If the validity and accuracy of the amount claimed is confirmed, K&B then provides the FDCPA Verification to the tenant. If, however, the claimed debt is found to be inaccurate, K&B takes no further action to collect it. Kucker Tr. 35-44; Zelman Decl. Ex. F.

8. The MPI Delinquency Report was thus duly forwarded for the preparation of a Three Day Notice by the legal assistant who was tasked with preparing the non-payment proceedings, who at that time was Barbara McKenzie. Accordingly, a Three Day Notice dated March 15, 2012, demanding payment of the overdue balance set forth in the MPI Delinquency Report (the "K&B Demand," a copy of which is annexed to the Zelman Declaration as Exhibit G) was prepared and served upon the Plaintiff by process server on March 19, 2012. After three days had passed from the service of the K&B Demand, K&B requested MPI to confirm whether the demanded amount had been paid. In response, MPI forwarded to K&B a one-page printout of dated March 23, 2012 titled "Legal Detail Report" bearing the notation "Emailed Barbara to process on 3/14/12" (the "MPI Legal Detail Report," a copy of which is annexed to the Zelman Declaration as Exhibit H), which showed that not only was the overdue amount of $1,125.23 still unpaid, but had in fact increased by the amount of $400.72, to $1,525.95 as of March 23, 2012. Accordingly, a Notice of Petition and

Petition dated March 26, 2012 (the "L&T Petition," a copy of which is annexed to the Zelman Declaration as Exhibit I), commencing a summary non-payment proceeding in Housing Court against the Plaintiff titled Woodfin Realty Corp. v. Lee, bearing L&T Index No. 060294/12 (the "L&T Proceeding"), to recover the amount set forth in the K&B Demand (as such non-payment proceeding is legally limited to recover the amount sought by the Three Day Notice, and thus could not seek the greater amount due reflected by the MPI Legal Detail Report) was prepared by K&B and served upon the Plaintiff by process server on April 2, 2012. Kucker Tr. 45-72, Zelman Decl. Exs. F, G, H, I.

9. The K&B Demand was received by the Plaintiff, who forwarded it to Mr. Baldacci. However, Plaintiff has no knowledge of any response made by Mr. Baldacci to the K&B Demand. The L&T Petition was subsequently received by Plaintiff, who also forwarded it to Mr. Baldacci. Lee Tr. 37 – 42, Lee Exs. 5, 6; Zelman Decl. Exs. C, G, I.

10. In response to the L&T Petition, Mr. Baldacci referred the Plaintiff to his attorney in the instant case, Mr. James Fishman. The Plaintiff retained Mr. Fishman on April 3, 2012, and then personally provided Mr. Fishman with all of the documentation that he had previously provided to Mr. Baldacci. Mr. Fishman's first communication with the Defendants was an e-mail sent to Alan Kucker at 6:47 p.m. on April 4, 2012 which in relevant part stated "I am writing with respect to your March 15, 2012 'Three Day Rent Demand' issued to my client. Please be advised that my client disputes the validity of the claim set forth in the notice and, pursuant to 15 USC §1692g, demands that you provide verification of the claim within the time required by law". The supposed urgency and immediacy of the response elicited was emphasized by Mr. Fishman's subsequent e-mail at 9:00 p.m. the same evening – just a little over two (2) hours later – that stated simply "Please respond to my letter" (the 6:47 p.m. and 9:00 p.m. e-mails together, the "Lee

6

Verification Demand," a copy of which is annexed to the Zelman Declaration as Exhibit J). Said Lee Verification demand did not provide any further information regarding the nature and basis of the Plaintiff's dispute with the K&B Demand. Upon receipt of the Lee Verification Demand K&B confirmed that it had received no information regarding the amounts that MPI alleged to be owed by the Plaintiff that contradicted the information twice provided by MPI in both the MPI Delinquency Report and the MPI Legal Detail Report. Accordingly, Mr. Kucker sent a letter to Plaintiff's counsel dated April 6, 2012 (the "K&B Verification," a copy of which is annexed to the Zelman Declaration as Exhibit K), which in relevant part stated "[p]ursuant to your request enclosed please find a printout obtained from Mall Properties, Inc., agent for Woodfin Realty Corp. verifying the sum of $1,125.23 as the debt owed by your client to Woodfin Realty Corp.," and enclosing a copy of the MPI Delinquency Report which contained the information set forth in the K&B Notice. Lee Tr. 43 – 49, Lee Ex. 7; Kucker Tr. 84-89, Ex. 8; Zelman Decl. Exs. C, F, J, K.

11. On April 4, 2012, Plaintiff's attorney served Plaintiff's Notice of Appearance and Verified Answer (the "L&T Answer," a copy of which is annexed to the Zelman Declaration as Exhibit L) upon the Defendants by regular mail. The L&T Answer asserted that the Plaintiff was entitled to a SCRIE subsidy and had paid in full each month all amounts for which he was responsible, so that the Plaintiff owed no past-due amount, and that therefore the K&B Demand was in error. Plaintiff is not aware of any information regarding his SCRIE status being provided to the Defendants other than that provided by his attorney, Mr. Fishman. Lee Tr. 51 – 54, Lee Ex. 10; Kucker Tr. 89; Zelman Decl. Exs. C, F, L.

12. Mr. Lopez was not aware that the Plaintiff had a SCRIE subsidy until he reviewed tenant SCRIE certificates sometime in April, 2012, after the L&T Proceeding against the Plaintiff had been commenced. The K&B attorney that Mr. Lopez spoke with regarding the

7

Plaintiff was Ivan Okun, but Mr. Lopez did speak with Mr. Okun regarding the Plaintiff prior to his review of the SCRIE certificates in April, 2012. Mr. Lopez did not initiate any communication or correspondence about the Plaintiff to anyone at K&B. Mr. Lopez did not speak to Mr. Kucker about the Plaintiff prior to the commencement of the L&T Proceeding. Lopez Tr. 41-47; Zelman Decl. Ex. D.

13. The Resident Ledger Detail Report produced by MPI which shows the accurate application of the Plaintiff's SCRIE subsidy from January, 2008 through December, 2011 was not generated from the regular MPI ledger; it was a retrospective report that was prepared by Sara Bennet in the Ohio office at the direction of Mr. Lopez, to reconcile the Plaintiff's account after it was realized in April, 2012 that the Plaintiff's SCRIE subsidy had not been accurately applied. Upon review of the Resident Ledger Detail Report, Mr. Lopez directed K&B to discontinue the L&T Proceeding. The Resident Ledger Summary Report dated May 15, 2012 (a copy of which is annexed to the Zelman Declaration as Exhibit M) which shows the accurate application of the Plaintiff's SCRIE subsidy from June, 2002 through May, 2012 was also prepared retrospectively by the Ohio office to effectuate the reconciliation of the Plaintiff's account to bring it current to the date of its preparation, carrying forward the reconciliation done in the Resident Ledger Detail Report. As the Resident Ledger Summary Report shows, the erroneous charges on the Plaintiff's account were not corrected on MPI's ledger until May, 2012. Lopez Tr. 70-83, Exs. 4, 5; Zelman Decl. Exs. D, M.

14. Upon being apprised of the Plaintiff's alleged SCRIE status, K&B immediately advised MPI and requested that MPI ascertain and confirm the true facts regarding this claim. MPI shortly responded that the Plaintiff was indeed receiving a SCRIE subsidy, which when properly applied resulted in the Plaintiff having no unpaid past due amount owed. Accordingly, K&B sought to

discontinue the case. As issue had already been joined, such discontinuance could not be unilateral by K&B but had to be pursuant to stipulation with opposing counsel, or by court order. Therefore, in court on April 13, 2012, the initial return date of the L&T Proceeding, the K&B attorney assigned to the L&T Proceeding, Gregg Kurlander, offered to discontinue said proceeding with prejudice. That offer was rejected by Plaintiff's counsel, Mr. Fishman, who conditioned his consent to such discontinuance upon the payment to him of his alleged legal fees in the amount of $1,500.00, which K&B was not authorized by MPI to agree to. As the parties could not agree upon such terms, the Lee Proceeding was adjourned to May 17, 2012, with the intent that a stipulation of discontinuance would be agreed upon and entered into in the interim. Kucker Tr. 90-94; Zelman Decl. Exs. F, N.

15. K&B subsequently offered on behalf of MPI to pay Plaintiff's counsel $500.00 in settlement of the Plaintiff's counterclaim in the L&T Proceeding, which offer was set forth in an Offer to Compromise Pursuant to C.P.L.R. §3221 dated May 4, 2012, transmitted to counsel with a cover letter dated May 7, 2012, by which the Plaintiff would be obligated to pay the costs incurred in the proceeding if he rejected the offer, and subsequently was awarded less than the offered amount on his counterclaim (the "Offer to Compromise," a copy of which is annexed to the Zelman Declaration as Exhibit N). The covering correspondence transmitted with the Offer to Compromise explained that if the offer were not accepted, K&B would apply pursuant to C.P.L.R. §3217(b) for discontinuance on terms imposed by the court, and if the court awarded Plaintiff less than the offered amount, K&B would seek the costs incurred from the time of the offer pursuant to C.P.L.R. §3221. Zelman Decl. Ex. N.

16. Plaintiff's counsel nonetheless rejected the Offer to Compromise, and persisted in his demand for $1,500.00 so that the L&T Proceeding was not consensually discontinued, and the case was called again in Housing Court on the adjourned date of May 17, 2012. At the morning calendar

call on that date before Housing Court Judge John Stanley (the "Stanley Hearing," a copy of the transcript of which is annexed to the Zelman Declaration as Exhibit O), the K&B attorney appearing on the case, Ivan Okun, orally applied for a court-ordered discontinuance pursuant to C.P.L.R. §3217(b) which Judge Stanley denied, and ordered the case to a trial part. At the afternoon hearing on the same day, May 17, 2012, before trial part Judge Laurie Lau (the "Lau Hearing," a copy of the transcript of which is annexed to the Zelman Declaration as Exhibit P), Mr. Okun again applied for a court-ordered discontinuance pursuant to C.P.L.R. §3217(b) which Judge Lau stated that she was inclined to grant conditioned upon the award to the Plaintiff of $1,500.00, but that said award might be effectuated by MPI applying it against the Plaintiff's future rent, and reserved decision which she stated would be forthcoming. Zelman Decl. Exs. N, O, P.

17. Judge Lau subsequently issued her written order, dated May 17, 2012 (the "L&T Discontinuance Order," a copy of which is annexed to the Zelman Declaration as Exhibit Q), which stated in relevant part that "Petitioner's application to discontinue their non-payment proceeding is granted on condition that petitioner pays respondent $1500.00 to be paid as follows: 1.) $750.00 credited to future rents accruing commencing June 2012 and 2.) $750.00 paid to respondent with its delivery to respondent's attorney by petitioner's attorney." It is undisputed that the terms of the L&T Discontinuance Order were complied with. Lee Tr. 59 – 61, Lee Ex. 12; Zelman Decl. Exs. C, Q.

18. The Plaintiff's summons and complaint commencing the instant FDCPA case was then filed on June 14, 2012 (the "Complaint," a copy of which is annexed to the Zelman Declaration as Exhibit A), to which the Defendants interposed their answer dated July 9, 2012 (the "Answer," a copy of which is annexed to the Zelman Declaration as Exhibit B). The Plaintiff's understanding of the basis for the relief sought herein is that "I need to release all this anxiety I have against my

landlord." The Plaintiff was not aware that the Defendants did not represent MPI in any matter pertaining to him prior to the K&B Demand and Petition and the L&T Proceeding. The Plaintiff erroneously believed that the Defendants had knowledge of the prior erroneous actions taken by MPI because he was told so by his attorney, Mr. Fishman. Lee Tr. 62 – 77, Lee Ex. 13; Zelman Decl. Exs. A,B, C.

19. The Plaintiff alleges that he has been treated by a psychiatrist for anxiety for "many years," but cannot not specify any additional treatment he received or expenses incurred as a result of the K&B Demand and L&T Petition. The Plaintiff has not received any further incorrect rent bills or demands since the L&T Proceeding was discontinued in May, 2012. Lee Tr. 77-79; Zelman Decl. Ex. C.

Dated: New York, New York
May 16, 2013

                                                   KUCKER & BRUH LLP
                                                   Attorneys for Defendants

                                        By: _____
                                              Abner T. Zelman, Esq.
                                                 747 Third Avenue
                                                 New York, New York 10017
                                                 (212) 869-5030

TO:
James B. Fishman, Esq.
Fishman & Mallon, LLP
305 Broadway, Suite 900
New York, N.Y. 10007
Attorneys for Plaintiff