UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                              :

RAFAEL LEE

                              :

               Plaintiff,           :        12 Civ. 4662 (LGS)

     - v -

                              :

KUCKER & BRUH, LLP and
ALAN D. KUCKER,

                              :

              Defendants.

                              :
------------------------------------------------------------X


## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


On the brief:
Abner T. Zelman, Esq.


KUCKER & BRUH LLP
Attorneys for Defendants
747 Third Avenue
New York, New York 10017
(212) 869-5030

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................    iii

PRELIMINARY STATEMENT ............................................................    1

RELEVANT UNDERLYING FACTS ……………………….…..    1

ARGUMENT.....................................................................................    7

I.  THE COMPLAINT FAILS TO STATE A CLAIM
    REGARDING THE ALLEGED VIOLATIONS OF
    SECTIONS 1692d, 1692e(4), 1692e(5), 1692e(10), AND 1692f.......    7

II. THE DEFENDANTS DID NOT VIOLATE THE FDCPA..........    9

   A.  The Defendants Did Not Violate FDCPA §1692e(2)(A)………...    9

   B.  The Defendants Did Not Violate FDCPA §1692g..................    14

       i. The K&B Verification Satisfied the Requirements of
          FDCPA §1692g(b)………………………………………    14

       ii. The Defendants' Ceasing Collection Satisfied the
           Requirements of FDCPA §1692g(b)...........................................    17

       iii. The Procedural Safeguards of the L&T Proceeding
            Satisfy the Requirements of FDCPA §1692g(b)……………    18

       iv. The Plaintiff Has Failed to Satisfy the Requirements
           of FDCPA §1692g(b)………………………………………..    20

III. ANY VIOLATION OF THE FDCPA RESULTED FROM
     UNINTENTIONAL BONA FIDE ERROR DESPITE
     REASONABLE PROCEDURES ADOPTED TO AVOID SAME…    21

CONCLUSION......................................................................    23

# TABLE OF AUTHORITIES

**CASES**                                                          **Page No.**

Acheampongtieku v. Allied Interstate, Inc.,
2005 U.S. Dist. Lexis 17901 (S.D.N.Y. 2005)............................   22

Bascom v. Dubin, 2007 U.S. Dist. Lexis 5349 (W.D.N.Y. 2007).........   15-16

Bentley v. Great Lakes Collection Bureau, Inc.,
6 F. 3d 60 (2d Cir. 1993)...............................................   13

Blanc v. Palisades Collection, LLP, 2007 U.S. Dist. Lexis 81484,
2007 WL 3254381, at *7 (S.D.N.Y. 2007)...............................   15

Bleich v. The Revenue Maximization Group, Inc.,
233 F. Supp. 2d 496 (E.D.N.Y. 2002).......................................   11, 16

Breen v. Schiff, 2012 U.S. Dist. Lexis 85340 (D. Conn. 2012)............   17

Chaudry v. Gallerizzo, 174 F. 3d 394 (4th Cir. 1999).......................   16-17

Clark v. Capital Credit & Collection Services, Inc.,
460 F.3d 1162 (9th Cir. 2006)..........................................   17

Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).......................   13

Derisme v. Hunt Leibert Jacobson, P.C.,
880 F. Supp. 2d 339 (D. Conn. 2012).....................................   17-18

Ducrest v. Alco Collections, Inc., 931 F. Supp. 459 (M.D. La. 1996).....   10

Graziano v. Harrison, 950 F.2d 107, 112-113 (3rd Cir. 1991)..............   16, 17

Hawkins-El III v. First American Funding, LLC,
891 F. Supp. 2d 402 (E.D.N.Y. 2012)......................................   15

Hubbard v. National Bond and Collection Associates, Inc.,
126 B.R. 422 (D. Del. 1991), aff'd without opinion,
947 F.2d 935 (3d. Cir. 1991)............................................   12-13, 20

Jang v. A.M. Miller and Associates, 122 F.3d 480 (7th Cir. 1997).........   17-18

Johnson v. Capital Management Services,
2011 U.S. Dist. Lexis 138023 (W.D.N.Y. 2011)...........................   11, 18

Katz v. Asset Acceptance LLC.,
2006 U.S. Dist. Lexis 86634 (E.D.N.Y. 2006)………………………....   21-22

Lindbergh v. Transworld Systems Inc.,
846 F. Supp. 175 (D. Conn. 1994)……..………………………….   18, 21

McStay v. I.C. System, Inc., 174 F. Supp. 2d 42 (S.D.N.Y. 2001)………   10-11

Russell v. Equifax A.R.S., 74 F.3d 30 (2d Cir. 1996)…………………...   13

Sayyed v. Wolpoff & Abramson, LLP,
733 F. Supp. 2d 635 (D. Md. 2010)………….………………………   12, 22

Smith v. Transworld Systems, Inc.,
953 F.2d 1025 (6th Cir. 1992)………..…………………………………   12, 18, 22

Stonehart v. Rosenthal, 2001 U.S. Dist. Lexis 11566 (S.D.N.Y. 2001)…   9-11, 14-17

## STATUTES

15 U.S.C. §1692 *et seq*..…………………………………………………   *passim*

15 U.S.C. § 1692d………………………………………………………   7-9

15 U.S.C. §1692e (2)(A)………………………………………………   7-14, *passim*

15 U.S.C. §1692e (4)………………………………………………………   7-9

15 U.S.C. §1692e (5)………………………………………………………   7-9

15 U.S.C. §1692e (10)…………………………………………………   7-9

15 U.S.C. § 1692f………………………………………………………   7-9

15 U.S.C. § 1692g………………………………………………………   7-9, 14-21, *passim*

15 U.S.C. § 1692k(c)………………………………………………………   21-23

## RULES

Fed. R. Civ. P. 56………………………………………………………... 1, *passim*

**Preliminary Statement**

Defendants Kucker & Bruh, LLP ("K&B") and Alan D. Kucker, Esq. ("Kucker") (together, the "Defendants") respectfully submit this memorandum of law in support of their motion for an order pursuant to Fed. R. Civ. P. 56 granting summary judgment (i) dismissing the complaint asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (the "FDCPA")("Complaint") of the plaintiff Rafael Lee ("Lee" or the "Plaintiff") commencing this case, and all claims asserted therein by the Plaintiff against the Defendants and (ii) affording the Defendants such other and further relief as the Court may deem just and proper (the instant "Motion").

**The Relevant Underlying Facts**

The relevant underlying facts of this matter are as stated and set forth at length in the accompanying Statement Pursuant to Local Rule 56.1 of Material Facts as to Which There Are No Triable Issues (the "Rule 56.1 Statement"), Declaration of Alan D. Kucker (the "Kucker Declaration" or "Kucker Decl."), Declaration of Abner T. Zelman (the "Zelman Declaration" or "Zelman Decl.") and the Exhibits annexed thereto (the "Exhibits" or "Exs."), which are recapped in abbreviated form below. Unless otherwise specified, all capitalized terms are defined as in the aforesaid Rule 56.1 Statement, and the Kucker and Zelman Declarations.

On or about March 14, 2012, K&B received the MPI Delinquency Report by e-mail from MPI. Prior to that date, K&B had no prior involvement in, or knowledge of, the Plaintiff or the premises at which he lived, and thus as of March, 2012 knew only the information contained in the MPI Delinquency Report -- which contained no information about the Plaintiff's age, status, rental history, or the fact that the Plaintiff was the recipient of a rent subsidy under the City of New York's Senior Citizen's Rent Increase Exemption ("SCRIE") program. Transcript of Deposition of Alan D.

Kucker ("Kucker Tr.," a copy of which is annexed to the Zelman Declaration as Exhibit F), 45-47; Zelman Decl. Ex. F.

The MPI Delinquency Report was duly forwarded for the preparation of a Three Day Notice by the legal assistant who was tasked with preparing the non-payment proceedings, who at that time was Barbara McKenzie. Accordingly, a Three Day Notice dated March 15, 2012, demanding payment of the overdue balance set forth in the MPI Delinquency Report (the "K&B Demand," a copy of which is annexed to the Zelman Declaration as Exhibit G) was prepared and served upon the Plaintiff by process server on March 19, 2012. After three days had passed from the service of the K&B Demand, K&B requested MPI to confirm whether the demanded amount had been paid. In response, MPI forwarded to K&B a one-page printout of dated March 23, 2012 titled "Legal Detail Report" bearing the notation "Emailed Barbara to process on 3/14/12" (the "MPI Legal Detail Report," a copy of which is annexed to the Zelman Declaration as Exhibit H), which showed that not only was the overdue amount of $1,125.23 still unpaid, but had in fact increased by the amount of $400.72, to $1,525.95 as of March 23, 2012.  Accordingly, a Notice of Petition and Petition dated March 26, 2012 (the "L&T Petition," a copy of which is annexed to the Zelman Declaration as Exhibit I), commencing a summary non-payment proceeding in Housing Court against the Plaintiff titled Woodfin Realty Corp. v. Lee, bearing L&T Index No. 060294/12 (the "L&T Proceeding"), to recover the amount set forth in the K&B Demand (as such non-payment proceeding is legally limited to recover the amount sought by the Three Day Notice, and thus could not seek the greater amount due reflected by the MPI Legal Detail Report) was prepared by K&B and served upon the Plaintiff by process server on April 2, 2012. Kucker Tr. 45-72, Zelman Decl. Exs. F, G, H, I.

The Plaintiff retained Mr. Fishman, his attorney in the L&T Proceeding and in the instant case, on April 3, 2012. Mr. Fishman's first communication with the Defendants was an e-mail sent to Alan Kucker at 6:47 p.m. on April 4, 2012 which in relevant part stated "I am writing with respect to your March 15, 2012 'Three Day Rent Demand' issued to my client. Please be advised that my client disputes the validity of the claim set forth in the notice and, pursuant to 15 USC §1692g, demands that you provide verification of the claim within the time required by law". The supposed urgency and immediacy of the response elicited was emphasized by Mr. Fishman's subsequent e-mail at 9:00 p.m. the same evening – just a little over two (2) hours later – that stated simply "Please respond to my letter" (the 6:47 p.m. and 9:00 p.m. e-mails together, the "Lee Verification Demand," a copy of which is annexed to the Zelman Declaration as Exhibit J). Said Lee Verification demand did not provide any further information regarding the nature and basis of the Plaintiff's dispute with the K&B Demand.  Upon receipt of the Lee Verification Demand K&B confirmed that it had received no information regarding the amounts that MPI alleged to be owed by the Plaintiff that contradicted the information twice provided by MPI in both the MPI Delinquency Report and the MPI Legal Detail Report.  Accordingly, Mr. Kucker sent a letter to Plaintiff's counsel dated April 6, 2012 (the "K&B Verification," a copy of which is annexed to the Zelman Declaration as Exhibit K), which in relevant part stated "[p]ursuant to your request enclosed please find a printout obtained from Mall Properties, Inc., agent for Woodfin Realty Corp. verifying the sum of $1,125.23 as the debt owed by your client to Woodfin Realty Corp.," and enclosing a copy of the MPI Delinquency Report which contained the information set forth in the K&B Notice.  Lee Tr. 43 – 49, Lee Ex. 7; Kucker Tr. 84-89, Ex. 8; Zelman Decl. Exs. C, F, J, K.

On April 4, 2012, Plaintiff's attorney served Plaintiff's Notice of Appearance and Verified Answer (the "L&T Answer," a copy of which is annexed to the Zelman Declaration as

Exhibit L) upon the Defendants by regular mail.  The L&T Answer asserted that the Plaintiff was entitled to a SCRIE subsidy and had paid in full each month all amounts for which he was responsible, so that the Plaintiff owed no past-due amount, and that therefore the K&B Demand was in error.  Plaintiff is not aware of any information regarding his SCRIE status being provided to the Defendants other than that provided by his attorney, Mr. Fishman.  Lee Tr. 51 – 54, Lee Ex. 10; Kucker Tr. 89; Zelman Decl. Exs. C, F, L.

Upon being apprised of the Plaintiff's alleged SCRIE status, K&B immediately advised MPI and requested that MPI ascertain and confirm the true facts regarding this claim.  MPI shortly responded that the Plaintiff was indeed receiving a SCRIE subsidy, which when properly applied resulted in the Plaintiff having no unpaid past due amount owed. Accordingly, K&B sought to discontinue the case. As issue had already been joined, such discontinuance could not be unilateral by K&B but had to be pursuant to stipulation with opposing counsel, or by court order. Therefore, in court on April 13, 2012, the initial return date of the L&T Proceeding, the K&B attorney assigned to the L&T Proceeding, Gregg Kurlander, offered to discontinue said proceeding with prejudice. That offer was rejected by Plaintiff's counsel, Mr. Fishman, who conditioned his consent to such discontinuance upon the payment to him of his alleged legal fees in the amount of $1,500.00, which K&B was not authorized by MPI to agree to.  As the parties could not agree upon such terms, the Lee Proceeding was adjourned to May 17, 2012, with the intent that a stipulation of discontinuance would be agreed upon and entered into in the interim. Kucker Tr.  90-94; Zelman Decl. Exs. F, N.

K&B subsequently offered on behalf of MPI to pay Plaintiff's counsel $500.00 in settlement of the Plaintiff's counterclaim in the L&T Proceeding, which offer was set forth in an Offer to Compromise Pursuant to C.P.L.R. §3221 dated May 4, 2012, transmitted to counsel with a cover letter dated May 7, 2012,  by which the Plaintiff would be obligated to pay the costs incurred in the

4

proceeding if he rejected the offer, and subsequently was awarded less than the offered amount on his counterclaim (the "Offer to Compromise," a copy of which is annexed to the Zelman Declaration as Exhibit N). The covering correspondence transmitted with the Offer to Compromise explained that if the offer were not accepted, K&B would apply pursuant to C.P.L.R. §3217(b) for discontinuance on terms imposed by the court, and if the court awarded less Plaintiff less than the offered amount, K&B would seek the costs incurred from the time of the offer pursuant to C.P.L.R. §3221. Zelman Decl. Ex. N.

Plaintiff's counsel nonetheless rejected the Offer to Compromise, and persisted in his demand for $1,500.00 so that the L&T Proceeding was not consensually discontinued, and the case was called again in Housing Court on the adjourned date of May 17, 2012. At the morning calendar call on that date before Housing Court Judge John Stanley (the "Stanley Hearing," a copy of the transcript of which is annexed to the Zelman Declaration as Exhibit O), the K&B attorney appearing on the case, Ivan Okun, orally applied for a court-ordered discontinuance pursuant to C.P.L.R. §3217(b) which Judge Stanley denied, and ordered the case to a trial part. At the afternoon hearing on the same day, May 17, 2012, before trial part Judge Laurie Lau (the "Lau Hearing," a copy of the transcript of which is annexed to the Zelman Declaration as Exhibit P), Mr. Okun again applied for a court-ordered discontinuance pursuant to C.P.L.R. §3217(b) which Judge Lau stated that she was inclined to grant conditioned upon the award to the Plaintiff of $1,500.00, but that said award might be effectuated by MPI applying it against the Plaintiff's future rent, and reserved decision which she stated would be forthcoming. Zelman Decl. Exs. N, O, P.

Judge Lau subsequently issued her written order, dated May 17, 2012 (the "L&T Discontinuance Order," a copy of which is annexed to the Zelman Declaration as Exhibit Q), which stated in relevant part that "Petitioner's application to discontinue their non-payment proceeding is

granted on condition that petitioner pays respondent $1500.00 to be paid as follows: 1.) $750.00 credited to future rents accruing commencing June 2012 and 2.) $750.00 paid to respondent with its delivery to respondent's attorney by petitioner's attorney." It is undisputed that the terms of the L&T Discontinuance Order were complied with. Lee Tr. 59 – 61, Lee Ex. 12; Zelman Decl. Exs. C, Q.

The Plaintiff's summons and complaint commencing the instant FDCPA case was then filed on June 14, 2012 (the "Complaint," a copy of which is annexed to the Zelman Declaration as Exhibit A), to which the Defendants interposed their answer dated July 9, 2012 (the "Answer," a copy of which is annexed to the Zelman Declaration as Exhibit B). The Plaintiff's understanding of the basis for the relief sought herein is that "I need to release all this anxiety I have against my landlord." The Plaintiff was not aware that the Defendants did not represent MPI in any matter pertaining to him prior to the K&B Demand and Petition and the L&T Proceeding. The Plaintiff erroneously believed that the Defendants had knowledge of the prior erroneous actions taken by MPI because he was told so by his attorney, Mr. Fishman. Lee Tr. 62 – 77, Lee Ex. 13; Zelman Decl. Exs. A, B, C.

The Plaintiff alleges that he has been treated by a psychiatrist for anxiety for "many years," but cannot not specify any additional treatment he received or expenses incurred as a result of the K&B Demand and L&T Petition. The Plaintiff has not received any further incorrect rent bills or demands since the L&T Proceeding was discontinued in May, 2012. Lee Tr. 77-79; Zelman Decl. Ex. C.

## Argument

### POINT ONE

**THE COMPLAINT FAILS TO STATE A CLAIM REGARDING THE ALLEGED
VIOLATIONS OF SECTIONS 1692d, 1692e(4), 1692e(5), 1692e(10), AND 1692f**

Although the Complaint groundlessly asserts, at paragraph 53 thereof, that the
Defendants' violations of the FDCPA "include, but are not limited to, violations of 15 U.S.C.
§§1692d, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692f, and 1692g," the sole material
allegations of fact contained in the Complaint -- that the K&B Demand and K&B Verification
were erroneous -- only state a claim (even if said allegations and the fallacious legal conclusions
that Plaintiff draws from them are taken to be true) at most pursuant to two (2) of the seven (7)
cited statutory sections: §1692e(2)(A) regarding "[t]he false representation of . . . the . . .
amount" of the debt, and §1692g regarding the providing of "verification of the debt"
(nonetheless, as set forth in detail in Points Two and Three below, the facts of this case do not
support said claims, which must therefore be dismissed). However, at the outset it must be noted
that the Complaint on its face does not allege any facts whatsoever that would state a claim
pursuant to the other five (5) sections of the FDCPA, which provide as follows:

(i) §1692d in relevant part prohibits "conduct the natural consequence of which is to
harass, oppress or abuse any person in connection with the collection of a debt," and gives as
illustrative examples of such conduct "[t]he use or threat of use of violence"; "[t]he use of
obscene or profane language"; "[t]he publication of a list of consumers who allegedly refuse to
pay debts"; "[t]he advertisement for sale of any debt"; "[c]ausing a telephone to ring . . .
repeatedly or continuously with intent to annoy, abuse or harass"; and "the placement of
telephone calls without meaningful disclosure of the caller's identity." The Complaint alleges no
such conduct by the Defendants, as no such conduct has ever occurred;

7

(ii) §1692e(4) in relevant part prohibits "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." The Complaint alleges no such conduct by the Defendants, as no such conduct has ever occurred;

(iii) §1692e(5) in relevant part prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." The Complaint alleges no such conduct by the Defendants, as no such conduct has ever occurred;

(iv) §1692e(10) in relevant part prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." The Complaint alleges no such conduct by the Defendants, as no such conduct has ever occurred;

(v) §1692f in relevant part prohibits using "unfair or unconscionable means to collect or attempt to collect any debt," and gives as illustrative examples of such conduct "[t]he collection of any amount" not "expressly authorized by the agreement creating the debt or permitted by law"; "[t]he acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days"; "[t]he solicitation by a debt collector of any postdated check"; "[d]epositing or threatening to deposit any postdated check . . . prior to the date on such check"; "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication"; "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" without the legal right or intent to do so; "[c]ommunicating with a consumer regarding a debt by post card"; and "[u]sing any language or symbol, other than the debt collector's address, on any envelope when

8

communicating with a consumer." The Complaint alleges no such conduct by the Defendants, as no such conduct has ever occurred.

Accordingly, Plaintiff's baseless, frivolous assertion that the Defendants violated the foregoing sections 1692d, 1692e(4), 1692e(5), 1692e(10), and 1692f of the FDCPA must be stricken.

**POINT TWO**

**THE DEFENDANTS DID NOT VIOLATE THE FDCPA**

**A.  The Defendants Did Not Violate FDCPA §1692e(2)(A)**

The K&B Demand, which contained the exact information provided to the Defendants by MPI in the MPI Delinquency Report, did not violate FDCPA §1692e(2)(A), which provides in relevant part:

> §1692e
> A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> *          *          *          *          *
> (2) The false representation of –
> (A) the character, amount, or legal status of any debt . . .

The weight of the relevant authorities construing §1692e(2)(A) of the FDCPA have determined that it imposes liability upon debt collectors only for their knowingly or intentionally false – i.e., "deceptive" or "misleading" – statement of the amount of the debt claimed. Thus, the obligation imposed upon debt collectors by said provision is to accurately report the information that is provided to them by the referring creditors, and not to audit the creditors' books to independently ascertain the accuracy of such information. As held by Judge Scheindlin in Stonehart v. Rosenthal, 2001 U.S. Dist. Lexis 11566 (S.D.N.Y. 2001), granting summary judgment dismissing an FDCPA §1692e claim against an attorney debt collector for verifying a

9

pleading containing allegedly false information which had been provided by the client creditor:

> The only basis for a FDCPA claim against [defendant] is if he acted unscrupulously in collecting a debt, not that he verified a complaint which inaccurately stated the amount of the debt. The focus of the inquiry must be on [defendant's] conduct.
>
> To state a claim under 1692e(2) of the FDCPA, [plaintiff] must show that [defendant] knowingly misrepresented the amount of the debt when he verified the complaint. *Plaintiff's claim under the FDCPA must fail because she has not cited to any evidence that [defendant] knowingly and intentionally verified a complaint that was inaccurate. [Defendant] asserts that he relied on information provided to him by [his client] when he verified the complaint. A debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt.*

2001 U.S. Dist. Lexis 11566 at *21-*22 (citations omitted)(emphasis supplied).

In so holding, the court in <u>Stonehart</u> approvingly cited <u>Ducrest v. Alco Collections, Inc.</u>, 931 F. Supp. 459 (M.D. La. 1996), in which the court, granting summary judgment dismissing plaintiff's FDCPA §1692e(2) claim against a debt collector for sending a collection letter seeking payment of an allegedly unauthorized charge, stated:

> The basis of plaintiff's claim under the FDCPA should be that defendant has acted unscrupulously in attempting to collect a debt, not that the debt collector is attempting to collect a debt that she doesn't owe. The validity of the debt would only be an issue if this were a suit by defendant to collect the debt. The focus of this inquiry is on the debt collector's conduct.
>
> Remembering the object of the FDCPA, and reading it as a whole, to state a claim under §1692e(2), plaintiff would have to show that defendant knowingly misrepresented the character, amount, or legal status of the debt. The language "false representation of the character, amount, or legal status of any debt" in §1692e(2)(A) must be read in conjunction with what it defines – a "false, deceptive, or misleading representation." *These terms clearly contemplate a knowing and intentional act. It is undisputed that defendant relied on the information provided to it by [creditor] in demanding payment of this debt. Plaintiff's claim under this section of the FDCPA has no merit because she has not shown that any misrepresentation of the amount of the debt claimed was knowing or intentional.*

931 F. Supp. at 462 (citations omitted)(emphasis supplied).

<u>Accord</u>, <u>McStay v. I.C. System, Inc.</u>, 174 F. Supp. 2d 42 (S.D.N.Y. 2001)(granting summary judgment dismissing plaintiff's FDCPA §1692e(2) claim alleging false representation of the

amount of debt where collection letter charged an incorrect interest rate, stating "[t]o successfully state a claim pursuant to §1692e(2), McStay must show that IC knowingly or intentionally misrepresented the amount of the debt in its collection letters . . . If anything, the evidence provided by IC indicates that IC justifiably relied on [creditor] to set the applicable rate. 'A debt collector must be able to rely on representations from his client as to the amount of debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt,'" citing Stonehart); Bleich v. The Revenue Maximization Group, Inc., 233 F. Supp. 2d 496 (E.D.N.Y. 2002), in which the court, granting summary judgment dismissing plaintiff's FDCPA §1692e(2) claim against a debt collector for sending a collection letter seeking payment of a hospital fee that had already been paid, stated:

> The court can understand, and indeed, sympathize with the frustration experienced by the Plaintiff when she continually received invoices seeking payment that had already been made. That frustration must have only escalated when the Hospital ignored documentation showing that the debt had been paid. ***Nonetheless, Revenue [the collector] was not involved at that point in time and was entitled to rely, in the first instance, on the Hospital's representation that the debt was valid.*** Revenue's collection letter was in full accord with the requirements of the FDCPA and therefore, cannot constitute a false or misleading action in violation of the statute.

233 F. Supp. 2d at 500 (emphasis supplied).

Accord, Johnson v. Capital Management Services, 2011 U.S. Dist. Lexis 138023 (W.D.N.Y. 2011)(granting summary judgment dismissing §1692e claim regarding creditor's demand that was alleged to be erroneous but not deceptive, stating "[p]laintiff also does not attempt to argue how [collector's] conduct amounts to a deceptive practice for purposes of the statute. Rather, it appears that Plaintiff merely seeks to air his dissatisfaction with [collector's] efforts at collecting an allegedly invalid debt, which is not actionable in this proceeding," citing Bleich v. The Revenue Maximization Group, Inc., supra).

See also Smith v. Transworld Systems, Inc., 953 F.2d 1025,1032 (6th Cir. 1992)(upholding the trial court's dismissal of plaintiff's FDCPA §1692e(2)(A) claim with respect to an erroneous collection demand, the Court of Appeals rejected the plaintiff's argument that the defendant collection agency "should have conducted an independent investigation of the [creditor's] debt referred to it for collection," and held instead that "[t]he district court correctly determined, however, that 'the statute does not require an independent investigation of the debt referred for collection"); Sayyed v. Wolpoff & Abramson, LLP, 733 F. Supp. 2d 635, 646 (D. Md. 2010)(granting summary judgment dismissing plaintiff's FDCPA §1692e(2) claim against a law firm debt collector for seeking court enforcement of a debt including an allegedly unauthorized interest charge, where the law firm relied upon information provided by its client credit card company, stating "[t]he FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection"); Hubbard v. National Bond and Collection Associates, Inc., 126 B.R. 422 (D. Del. 1991), aff'd without opinion, 947 F.2d 935 (3d. Cir. 1991), in which the court, granting summary judgment dismissing plaintiff's FDCPA §1692e(2) claim against a debt collector for mistakenly sending a collection letter in violation of the plaintiff's bankruptcy stay, stated:

> Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. This language suggests to the Court that §1692e was intended to prohibit only knowing or intentional misrepresentations by debt collectors. Black's Law Dictionary defines the terms "false representation," "false," "deception," and "misleading" as follows:
> FALSE REPRESENTATION. A representation which is untrue, wilfully made to deceive another to his injury.
> FALSE. In law, this word usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.
> DECEPTION. The act of deceiving; intentional misleading by falsehood spoken or acted.
> MISLEADING. Delusive; calculated to lead astray or to lead into error.
> *Black's Law Dictionary 750, 748, 529 & 1193 (3d ed. 1933).* ***The plain meaning of §1692e is that only knowing and intentional conduct is punishable. This interpretation***

*of §1692e is consistent with the FDCPA's purpose and structure.*
126 B.R. at 427 (emphasis supplied).

The foregoing authorities for the proposition that "only knowing and intentional conduct is punishable" pursuant to §1692e, are not inconsistent with the decisions of this Circuit – Russell v. Equifax A.R.S., 74 F.3d 30 (2d Cir. 1996), Bentley v. Great Lakes Collection Bureau, Inc., 6 F. 3d 60 (2d Cir. 1993), Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993) – that have stated, in construing other provisions of the FDCPA, that the FDCPA is a "strict liability" statute for which intent is not a necessary element. Russell held simply that "[o]nce it is shown that defendant . . . *failed to fulfill the requirements of the Act,* strict liability is imposed," id at 36 (emphasis supplied). The specific requirement implicated in that case was the 30-day notice requirement pursuant to 15 U.S.C. §1692g, the express language of which imposed an affirmative requirement to include the statutory validation notice that, if not complied with, was violated regardless of the defendant's intent. The defendant collector was held liable for sending a notice with language that could be construed as inconsistent with the required statutory language, regardless of the defendant's subjective intent not to create such ambiguity. Similarly, the violations at bar in Bentley and Clomon were debt notices that contained allegedly deceptive characterizations of the manner in which the debtor's account was being handled, for which the collectors were held strictly liable, regardless of their subjective intent not to deceive. By contrast, the requirement pursuant to 15 U.S.C. §1692e(2) at issue in the instant case is a prohibition of making a "false representation" of the amount of the asserted debt, the plain meaning of which provision is that the representation must be "false" – i.e., *knowingly* untrue. As the uncontroverted evidence in this case shows that the Defendants relied entirely on the MPI Delinquency report in preparing the K&B Demand, and had no independent knowledge of the correct amount of the rent owed by the Plaintiff, the Defendants cannot be held liable for

13

violating FDCPA §1692e(2)(A), and Plaintiff's claim against the Defendants in respect thereof must be dismissed.

**B.  The Defendants Did Not Violate FDCPA §1692g**

It is undisputed that the K&B Demand contained the statutory notice required pursuant to FDCPA §1692g(a). Further, the Defendants satisfied the requirements of FDCPA §1692g(b), which provides in relevant part:

> §1692g
> (b) Disputed debts
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.

It is undisputed that the K&B Verification, which enclosed and provided the Plaintiff with a copy of the MPI Delinquency Report, thereby fully and accurately disclosed the information provided to the Defendants by MPI that was contained in the K&B Demand.  The Defendants thus satisfied the criteria for a verification to the extent required pursuant to FDCPA §1692g(b). Moreover, the Defendants' undisputed cessation of collection of the demanded rent from the Plaintiff as soon as the Defendants learned that said demand was in error constitutes full compliance with the requirements of FDCPA §1692g even if the Defendants had not provided any verification. Accordingly, the Defendants are not liable for violating FDCPA §1692g, and Plaintiff's claim against the Defendants in respect thereof must be dismissed.

**i. The K&B Verification Satisfied the Requirements of FDCPA §1692g(b)**

The weight of the relevant authorities construing §1692g(b) of the FDCPA have determined that it requires verification only of the amount of debt claimed by the creditor. See, e.g., Stonehart v. Rosenthal, 2001 U.S. Dist. Lexis 11566, supra, granting summary judgment

dismissing an FDCPA §1692g(b) claim against an attorney debt collector for allegedly failing to properly verify the debt, in which the court stated:

> Verification of a debt requires only that the debt collector obtain a written statement that "the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." Verification is only intended to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."
> The Account Statement that Dr. Lhota provided to Rosenthal, which in turn was sent to Stonehart, was sufficient to verify the debt. The Account Statement consisted of a computer printout that sufficiently informed Stonehart of the service provided by Dr. Lhota, the dates on which the charges were incurred, and the amount of her debts. Because nothing more is required, summary judgment in defendants' favor is also appropriate on this issue.

2001 U.S. Dist. Lexis 11566 at *23 - *24 (citations omitted).

See also Hawkins-El III v. First American Funding, LLC, 891 F. Supp. 2d 402, 410 (E.D.N.Y. 2012) (granting defendants' motion for summary judgment dismissing plaintiff's claim that defendants failed to verify debt pursuant to FDCPA §1692g(b) where defendants had provided plaintiff with copies of the information received from the creditor, holding that "'verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed'")(citations omitted); Blanc v. Palisades Collection, LLP, 2007 U.S. Dist.  Lexis 81484, 2007 WL 3254381, at *7 (S.D.N.Y. 2007)(denying plaintiff's motion for partial summary judgment on its claim alleging defendants' failure to provide verification of a debt pursuant to FDCPA §1692g(b) where defendant alleged it had provided sufficient verifying information in correspondence sent to the plaintiff, stating that such verification requires only confirmation that the amount demanded is what the original creditor is claiming); Bascom v. Dubin, 2007 U.S. Dist. Lexis 5349 (W.D.N.Y. 2007)(denying plaintiff's motion for summary judgment on its claim pursuant to FDCPA §1692g(b) alleging defendants' failure to provide verification of a debt where defendant had provided copies of the creditor's billing statements, the court rejected plaintiff's argument that "validation of a debt

requires 'presentment of the account and a general ledger statement signed and dated by the person responsible for maintaining the account and original contract,'" and held that "[v]erification of a debt requires only that the debt collector obtain a written statement that 'the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt'")(citing, inter alia, Stonehart v. Rosenthal, supra); Bleich v. The Revenue Maximization Group, Inc., supra, 233 F. Supp. 2d at 501 (holding that the defendant debt collector "can incur no liability where it has complied with the debt validation procedure set forth in the FDCPA -- even if the actual debt is not in arrears").

The foregoing authorities are in accord with the prevalent appellant caselaw. See Graziano v. Harrison, 950 F.2d 107, 112-113 (3rd Cir. 1991)(affirming summary judgment dismissing the plaintiff's claim of failure to verify the debt pursuant to FDCPA §1692g(b) where the collector had provided the creditors computer printouts of the debt amounts, in a decision cited by Stonehart v. Rosenthal, supra);  Chaudry v. Gallerizzo, 174 F. 3d 394, 406 (4th Cir. 1999), in which the court affirmed summary judgment dismissing the plaintiff's claim of failure to verify the debt pursuant to FDCPA §1692g(b) where the collector had provided the creditor's computerized summary of the debt, stating (in a decision cited by Stonehart v. Rosenthal, supra):

> Contrary to Appellants' contention, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. Consistent with the legislative history, verification is only intended to "eliminate the ... problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to forward copies of bills or other detailed evidence of debt.
> In the present case, [collector], after receiving assurances from [creditor] that the sums were owed, verified the debt amounts in his January 18th letter to Plaintiffs' counsel and forwarded a copy of the bank's computerized summary of the [plaintiffs'] loan transactions . . . Thereafter, in a January 19th letter to counsel, [collector] restated the amount of the inspection fees and indicated that the amounts were correct. Nothing more is required.

174 F. 3d at 406 (citing, inter alia, Graziano v. Harrison, supra).

Accord, Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173-1174 (9th Cir. 2006)(holding that re-sending creditor's itemized statement satisfied verification requirements of FDCPA §1692g(b), the court stated "we adopt as a baseline the more reasonable standard articulated by the Fourth Circuit in Chaudry v. Gallerizzo, 174 F. 3d 394 (4th Cir. 1999) . . . [collectors] were entitled to rely on their client's statements to verify the debt"); Derisme v. Hunt Leibert Jacobson, P.C., 880 F. Supp. 2d 339, 370 (D. Conn. 2012)(holding that collector law firm's motion papers in foreclosure action provided sufficient verification of debt to satisfy the requirements of FDCPA §1692g(b), stating that verification requires only a written statement that the debt demanded is what the creditor in fact is claiming, citing, inter alia, Chaudry v. Gallerizzo and Stonehart v. Rosenthal, supra); Breen v. Schiff, 2012 U.S. Dist. Lexis 85340 (D. Conn. 2012)(similarly holding that collector law firm's letter enclosing copy of creditor's statement provided sufficient verification of debt to satisfy the requirements of FDCPA §1692g(b), stating that verification requires only a written statement that the debt demanded is what the creditor in fact is claiming, citing, inter alia, Chaudry v. Gallerizzo and Stonehart v. Rosenthal, supra).

## ii. **The Defendants' Ceasing Collection Satisfied the Requirements of FDCPA §1692g(b)**

In the case at bar, the Defendants' cessation of collection of the amount sought by the K&B Demand immediately upon learning that it was in error is well documented and uncontroverted. As stated by the court in Jang v. A.M. Miller and Associates, 122 F.3d 480 (7th Cir. 1997) in upholding summary judgment dismissing claims alleging violations of §1692g(b) where the collector had discontinued collection efforts upon receipt of statutory validation demands:

17

Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities . . . The statute wisely anticipates that not all debts can or will be verified. After all, in the real world, creditors and debt collectors make mistakes, and sometimes initiate collection activities against persons who do not owe a debt. *When a collection agency cannot verify a debt, the statute allows the debt collector to cease all collection activities at that point without incurring any liability for the mistake.*

122 f. 3d at 483 (emphasis supplied).

Accord, Johnson v. Capital Management Services, supra (granting summary judgment dismissing claims alleging violations of §1692g(b) where the collector had discontinued collection efforts, holding that "[collector] did more than it was required to do under the FDCPA by halting collection efforts," citing Jang v. A.M. Miller and Associates, supra).  See also Smith v. Transworld Systems, Inc., supra, 953 F. 2d at 1031 (holding that "defendant did follow the guidelines of 15 U.S.C. §1692g(b) by ceasing and desisting from collection of the debt. Because defendant ceased collection activities, defendant was not obligated to send a separate validation of the debt to plaintiff"); Lindbergh v. Transworld Systems Inc., 846 F. Supp. 175, 179 (D. Conn. 1994)(granting summary judgment dismissing claim for violating verification provisions of §1692g(b) where defendant ceased collection activities as soon as it received actual notice that plaintiff's debt was time-barred).

### iii. The Procedural Safeguards of the L&T Proceeding Satisfy the Requirements of FDCPA §1692g(b)

Even assuming, arguendo, that the K&B Verification did not satisfy the verification requirements of FDCPA §1692g(b), the procedural safeguards and requirements of the litigation process pursuant to the New York Real Property Actions and Proceedings Law ("R.P.A.P.L.") with respect to the L&T Proceeding did satisfy such requirements. As held by the court in Derisme v. Hunt Leibert Jacobson, P.C., supra, in holding that collector law firm's motion papers

18

in foreclosure action provided sufficient verification of debt to satisfy the requirements of FDCPA §1692g(b):

> [T]he foreclosure action itself and Hunt Leibert's objection to the motion to dismiss fulfill the purpose of the FDCPA's verification requirement in that it eliminates the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. Indeed, the evils the verification requirement seeks to eliminate are already protected against by the panoply of safeguards afforded to civil litigants under Connecticut law . . . Moreover, the foreclosure is judicially supervised as is the attorney . . . Thus the foreclosure proceeding afforded the Plaintiff even more protection than the FDCPA disclosure requirements afforded her.

880 F. Supp. 2d at 370.

The pleading and evidentiary requirements of the litigation process and the accountability of attorneys in adhering to them provide greater safeguards than do the verification provisions of FDCPA §1692g(b), that an action to collect a debt will not be commenced against the wrong person, or for a wrong or invalid amount; that the purported debtor will be provided full disclosure of the basis for the alleged debt sought to be collected; and, significantly, that the collector will be provided full disclosure of the basis of any meritorious defenses to the asserted debt, which would warrant the voluntary discontinuance of the action. This is exactly what occurred in the case at bar, where the relevant facts regarding the basis for the Plaintiff's dispute of the debt alleged in the K&B Demand and the L&T Petition were provided by the Plaintiff not in the Lee Verification Demand pursuant to FDCPA §1692g(b), but only in the L&T Answer, when then led to the Defendants' immediate cessation of collection efforts, and efforts to discontinue the L&T Proceeding.  Moreover, the L&T Discontinuance Order that was sought by the Defendants and which ended the L&T Proceeding required MPI to compensate both the Plaintiff and his counsel for monetary damages attributable to MPI's erroneous billing of rent not due from the Plaintiff, which compensation has been provided, thereby rendering the relief sought by the Plaintiff in this case duplicative, excessive and unwarranted.

**iv. The Plaintiff Has Failed to Satisfy the Requirements of FDCPA §1692g(b)**

Moreover, the Plaintiff's counsel's failure to disclose the factual basis for his dispute of the alleged debt in the Lee Verification Demand that was sent by e-mail on April 4, 2012 (while providing such facts in accordance with pleading requirements in the L&T Answer that was prepared on the same day, April 4, 2012, but was served on the Defendants by regular mail so as to be received days afterwards) impeded the ability -- and thus obviated the obligation -- of the Defendants to provide a verification to the Plaintiff pursuant to FDCPA §1692g(b).  As held by the court in Hubbard v. National Bond and Collection Associates, Inc., supra, in dismissing an FDCPA claim against a debt collector for mistakenly sending a collection letter in violation of the plaintiff's bankruptcy stay:

> According to plaintiff's counsel, Cassie Hubbard has a cause of action under § 1692e because a debt collector must investigate a debtor's financial background before contacting the debtor. This proposition is contrary to the intentions of Congress and the purpose behind § 1692g of the FDCPA. *Section 1692g was intended to provide a means by which relevant information could be exchanged between the debtor and debt collector in a cost effective manner.* Under § 1692g a debtor must be notified in writing that he can dispute the validity of a debt, or any portion of it, and demand verification of the debt's existence. 15 U.S.C. § 1692g(a). *Through this process, the debt collector learns whether the debt is contested and the reasons, if any, for the debtor's refusal to pay.* The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information . . .
> The exchange of information provided for by § 1692g, for present purposes, serves two relevant functions. First, the exchange of information between debtors and debt collectors ensures that debt collectors promptly receive relevant factual information concerning debtors so that unnecessary contacts between debt collectors and debtors can be minimized. *Second, this exchange of information provides debt collectors with "actual knowledge" of the facts relevant to their collection efforts. This is significant because only a knowing violation of § 1692e is actionable. Though a mistake of law is never a defense, a mistake of fact may excuse conduct that would otherwise violate the FDCPA. After the validation procedure of § 1692g, a debt collector would have actual knowledge of the facts relevant to a particular debt and could be held liable under the FDCPA for any further debt collection efforts that violate the letter of the act. Therefore, under § 1692g, the debtor bears a responsibility to notify the debt collector of facts which the debt collector would not otherwise be aware.*

126 B.R. at 427-428 (emphasis supplied)(citations omitted).

Accord, Lindbergh v. Transworld Systems Inc., supra, in which the court, noting that the plaintiff

had brought an FDCPA action against the collector for attempting to collect a time-barred debt,

without first informing the collector that the debt was time-barred:

> On this record, the court can only wonder why the plaintiff has chosen to impose
> the significant burden of this litigation on both the defendant and this court, instead
> of simply following the cost-effective procedures provided by the FDCPA specifically
> designed to facilitate the exchange of information between debt collectors and debtors.
> Put simply, the plaintiff's position ignores the importance of Section 1692g – which
> serves to obviate the need for litigation except where a debt collector has behaved
> knowingly, or at least recklessly, in violation of the statute.

846 F. Supp. at 178-179.

## POINT THREE

### ANY VIOLATION OF THE FDCPA RESULTED FROM UNINTENTIONAL BONA FIDE ERROR DESPITE REASONABLE PROCEDURES ADOPTED TO AVOID SAME

Assuming arguendo that any of the Defendants' actions complained of in this case – i.e.,

the service on the Plaintiff of the K&B Demand and K&B Verification containing erroneous

information claiming amounts that were not in fact owed by the Plaintiff – constituted technical

violation of the FDCPA, the Defendants should nonetheless not be held liable therefor pursuant

to 15 U.S.C. §1692k(c), which provides:

§1692k
(c) Intent
A debt collector may not be held liable in any action brought under this subchapter if the
debt collector shows by a preponderance of evidence that the violation was not intentional
and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably
adapted to avoid any such error.

In applying 15 U.S.C. §1692k(c), "[t]o be eligible for this 'bona fide error' defense, a

debt collector need not demonstrate that its procedures for avoiding violations are 'fool proof'

but rather, must only show that its procedures constitute a 'reasonable precaution.'" Katz v.

Asset Acceptance LLC., 2006 U.S. Dist. Lexis 86634, *6-*7 (E.D.N.Y. 2006)(granting summary

judgment dismissing FDCPA claims against law firm that had commenced collection actions in

wrong venue, where un-rebutted testimony established §1692k(c) defense that mistake in venue was unintended, and resulted from good faith non-negligent clerical error).  Further, while "reasonable precaution" is required, "the law does not require every possible precaution but, rather, reasonable procedures."  Acheampongtieku v. Allied Interstate, Inc., 2005 U.S. Dist. Lexis 17901, *18, *20 (S.D.N.Y. 2005)(granting summary judgment dismissing claims against debt collector for sending collection letter that allegedly contained inaccuracies in violation of FDCPA notice requirements, where undisputed record established §1692k(c) defense that the inaccuracies were unintentional and reasonable procedures to review the letter were in place). See also Smith v. Transworld Systems, Inc., supra, 953 F.2d at 1032 (affirming summary judgment dismissing FDCPA claim where record established §1692k(c) defense that "[collector] reasonably relied on the accuracy of [client creditor's] $456.21 debt figure; the resulting mistake was bona fide error pursuant to 15 U.S.C. §1692k(c)");  Sayyed v. Wolpoff & Abramson, LLP, supra at 647 (granting summary judgment dismissing FDCPA claim where record established §1692k(c) defense that "a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under *15 U.S.C. §1692k(c)*")(italics in original).

In the case at bar, K&B acted at all times in good faith and did not in any way deceive or knowingly misrepresent any facts to the Plaintiff.  It is undisputed that K&B lacked any knowledge and had no practical means of knowing that the amounts demanded in the K&B Demand and in the L&T Petition, and verified in the K&B Verification, were erroneous, at the time those documents were made and sent to the Plaintiff.  It is further undisputed that at such time, K&B had no knowledge whatsoever of the Plaintiff's SCRIE status, or of MPI's erroneous rent demand made to the Plaintiff in October, 2011 and MPI's erroneous non-payment proceeding against the Plaintiff in

2009. It is additionally undisputed that K&B took every feasible step to cease collection efforts on the amounts that were erroneously demanded from the Plaintiff as soon as K&B was apprised of such error, as K&B sought the immediate discontinuance of the L&T Proceeding.

Moreover, the procedures employed by K&B in issuing Three Day Notices and petitions commencing non-payment proceedings in Housing Court, which required written documentation from a client's regularly maintained business records (such as the MPI Delinquency Report) to provide the information regarding the alleged unpaid amount to be demanded in the Three Day Notice, and subsequent confirmation by additional such client documentation (such as the MPI Legal Detail Report) that the amount initially demanded remained outstanding and unpaid prior to commencing a non-payment proceeding in Housing Court, and utilized a specially trained assistant who specialized in preparing such notices and petitions, are legally, commercially and practically reasonable, and comport with the highest feasible standards of practice. Accordingly, summary judgment should be granted dismissing the instant action against the Defendants pursuant to, inter alia, the bona fide error defense under FDCPA §1692k(c).

## Conclusion

Accordingly, for all of the reasons set forth herein above, and in the Defendants' accompanying Rule 56.1 Statement, Kucker Declaration, and Zelman Declaration in support of the Defendants' instant Motion, the Defendants' Motion should be granted in full, the Plaintiff's Complaint commencing this case and all claims asserted against the Defendants therein should be dismissed, and the Defendants should be afforded such other and further relief as this Court may

deem just and proper.

Dated: New York, New York
      May 16, 2013

KUCKER & BRUH LLP
Attorneys for Defendants

By: _____
    Abner T. Zelman, Esq.
    747 Third Avenue
    New York, New York 10017
    (212) 869-5030

TO:
James B. Fishman, Esq.
Fishman & Mallon, LLP
305 Broadway, Suite 900
New York, N.Y. 10007
Attorneys for Plaintiff