| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>RAFAEL LEE, | Docket No. 12 CV 4662<br>(LBS) |
| **Plaintiff,**<br>-against-<br><br>KUCKER & BRUH, LLP and<br>ALAN D. KUCKER,<br><br>**Defendants.** | STATEMENT<br>PURSUANT TO LOCAL<br>RULE 56.1 |

The plaintiff, in compliance with and pursuant to Local Rule 56.1, states that the following is a statement of material facts as to which he contends there is no genuine issue to be tried:

1. The plaintiff is an 82 year old man who has resided at 810 West 183rd Street, Apartment 3D, New York, NY (the "subject apartment") since 1965. (See complaint, Exhibit A, ¶ 10; Deposition of Rafael Lee, Exhibit B, p. 10)

2. The plaintiff's tenancy at the subject apartment is governed by the New York City Rent Control Law. (Ex. A, ¶ 11)

3. The plaintiff's landlord is Woodfin Properties, Inc. ("Woodfin"). (Ex. A, ¶ 13; lease agreement, Exhibit C)

4. Mall Properties, Inc. ("MPI") is the managing agent for Woodfin at the subject apartment and the building in which it is located. (Exhibit A, ¶ 13)

5. Since at least 1995 the plaintiff has had a Senior Citizen Rent Increase

Exemption ("SCRIE") issued by the New York City Department of Finance. (Exhibit A, ¶ 14; SCRIE certificate, Exhibit E).

6. The SCRIE program provides a rent subsidy to low income, elderly rent controlled or rent stabilized tenants whose income is below a statutory threshold.

7. Under the program, eligible rent controlled and rent stabilized tenants are legally liable to pay only a portion of their lawful rent while the landlord receives a real estate tax abatement equal to the balance.

8. It is illegal for landlords to collect any amount from a tenant for rent or other charges (including fuel charges) beyond the amount permitted under the SCRIE program. New York City Admin. Code § 26-608.

9. The defendants began representing MPI in non-payment of rent cases in January 2012. (Exhibit H, p. 47)

10. In March 2012 the current legally collectable monthly rent controlled rent for the plaintiff's apartment was $790.30.

11. Since at least 1995, the plaintiff's SCRIE eligilbility order fixed his monthly rent obligation at $400.72. (Ex. E; SCRIE renewal, Exhibit F)

12. Each month, since at least 2003 that amount has been paid to MPI, on Woodfin's behalf, on or about the first of each month, by The Isaac H. Tuttle Fund, a private social service agency that provides social services assistance to elderly tenants such as the plaintiff. (Tuttle letter with March 2012 check, Exhibit G; Exhibit B, p. 15)

13. The defendant Kucker & Bruh, LLP ("K&B") is a law firm that primarily represents landlords in New York City. (Exhibit H, p. 15)

14. K&B commences numerous proceedings in the New York City Housing Court on behalf of its landlord clients against residential tenants alleging non-payment of rent. (Ex. H, p. 17)

15. K&B and Kucker are "debt collectors," as defined by the FDCPA. (15 USC § 1692a(6)) **Dowling v. Kucker Kraus & Bruh, LLP; Kucker & Bruh, LLP; and Alan D. Kucker,** 2005 U.S. Dist. LEXIS 11000 (SDNY 2005); (Exhibit H, p. 25)

16. The plaintiff is a "consumer" within the meaning of the FDCPA

17. The claim asserted against the plaintiff by the defendants is a "debt" within the meaning of the FDCPA.

18. On or about March 1, 2012 the plaintiff's March 2012 rent, in the amount of $490.72 was paid to MPI by the Tuttle Fund. That check was negotiated by MPI at that time. (Exhibit G)

19. On March 15, 2012, K&B, on MPI's behalf, issued a statutory rent demand (the "demand") to the plaintiff demanding payment of $1125.23 consisting of March 2012 rent and various fuel charges. (Exhibit I)

20. The demand was signed by Kucker. (Exhibit I)

21. The demand was one of 19 that Kucker had signed that day involving MPI tenants. (Exhibit H, supplemental material, p. 2)

22. The demand threatened the plaintiff with the commencement of eviction proceedings if the amount demanded was not paid in three days. (Exhibit I)

23. Before K&B issued the demand it received a document from MPI which showed that it credited a payment of $490.72 to the plaintiff on March 6, 2012.

24. The defendants made no effort to determine from MPI or anyone else how the March 6, 2012 payment had been applied or whether it constituted payment of the plaintiff's March 2012 rent obligation. (Exhibit H, pp. 60-61)

25. The defendants contend that they have no any obligation to confirm the accuracy of rent claims submitted to them by their clients before commencing a summary eviction proceeding. (Exhibit H, pp. 100-102)

26. On March 26, 2012 the defendants commenced a summary eviction proceeding against the plaintiff in the New York City Housing Court alleging non-payment of the $1125.23 set forth in the demand. (*Woodfin Realty v. Lee,* Index No. L&T 60394/12) (the 2012 summary proceeding) (Exhibit J)

27. In connection with that proceeding, Kucker verified the truth of the allegations of the petition. (Exhibit J, p. 6)

28. In that proceeding Kucker confirmed, pursuant to the New York Uniform Court Rules (NYCRR) Part 130 that he conducted a

"reasonable inquiry" before commencing the proceeding and that the contentions in the petition "are not frivolous." (Exhibit J, p. 2)

29. On April 4, 2012 the plaintiff retained counsel to represent him in connection with the non-payment proceeding. (February 25, 2013 decision and order of Magistrate Judge Francis)

30. On April 4, 2012 the plaintiff's attorney sent a letter to the defendants pursuant to the FDCPA (15 USC § 1692g) disputing the validity of the debt and demanding verification of it. (Exhibit K)

31. On April 4, 2012, the plaintiff's attorney sent to K&B a written verified answer to the eviction proceeding asserting, *inter alia*, that the plaintiff's March 2012 had already been paid, that he had a valid SCRIE and was therefore not liable for any of the rent or fuel charges sought in the petition. (Exhibit L)

32. On April 6, 2012 the defendants responded to the plaintiff's demand for verification by sending a printout from MPI which reflected the plaintiff's March 6, 2012 payment of $400.72 but erroneously claimed that the plaintiff owed $1125.23. (Exhibit M)

33. Following receipt of the plaintiff's answer to the petition in the 2012 summary proceeding, which expressly advised that he had a SCRIE and therefore owed nothing to his landlord, the defendants failed to issue an amended response to the plaintiff's demand for verification of

the debt acknowledging that he did not owe any sum whatsoever to his landlord.

34. In April, 2012, the defendants offered to discontinue the eviction proceeding, *without prejudice,* which would have permitted the commencement of a new proceeding, for the same rent.

35. In response, the plaintiff demanded that the proceeding be discontinued, *with prejudice* and that the petitioner landlord pay the plaintiff's legal fees, in the amount of $1500.00. (Exhibit Q)

36. On May 17, 2012 the proceeding was sent to Judge Laurie Lau, for trial. Rather than proceed to trial the petitioner made an application to discontinue the proceeding. That application was granted upon the condition that the petitioner pay the plaintiff's legal fees, in the amount of $1500.00. (Exhibit R)

37. The defendants have no written procedures, guidelines, policies, rules or procedures regarding the collection of debts. (Exhibit H, p. 9)

38. The defendants have not written materials relating to procedures, rules or guidelines to maintain compliance with the FDCPA. (Exhibit H, p. 10)

39. The defendants have no formalized procedures of any kind to avoid committing errors in the collection of consumer debts. (Exhibit H, pp. 94-97)

Dated: New York, NY
      May 16, 2013

Respectfully submitted,

_____
JAMES B. FISHMAN (jbf 8998)
FISHMAN & MALLON, LLP
305 Broadway  Suite 900
New York, NY 10007
212 897-5840
*www.nyctenantslaw.com*