UNITED STATES DISTRICT COURT       Docket No. 12 CV 4662
SOUTHERN DISTRICT OF NEW YORK    (LBS)
RAFAEL LEE,

            Plaintiff,

    -against-

KUCKER & BRUH, LLP and
ALAN D. KUCKER,

          Defendants.

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

JAMES B. FISHMAN (jbf 8998)
SUSAN K. CRUMILLER
FISHMAN & MALLON, LLP
305 Broadway  Suite 900
New York, NY 10007
212 897-5840
www.nyctenantslaw.com
Attorneys for the Plaintiff

# TABLE OF CONTENTS

INTRODUCTION                                                                                          1

Statement of facts                                                                                   2

Procedural posture of this action                                                                    7

LEGAL ARGUMENT

    I.       The Summary Judgment Standard                                               8

    II.      A Reasonable Jury Could Find that the Defendants
             violated the FDCPA                                                            8

             A.  The Structure and purpose of the FDCPA                                     8

             B. The allegations against the defendants                                    10

             C. The documentary evidence and deposition
             Testimony fully establish that the defendants
             are subject to the FDCPA and that they violated it
             in their attempt to collect a debt from the plaintiff.                        11

    III.     The FDCPA, with few exceptions not relevant here,
             is a strict liability statute.  As such, the plaintiff is
             not required to establish that the defendants'
             conduct was knowing or intentional                                           12

    IV.     The Defendants cannot establish a *bona fide*
             error defense to the complaint's allegations,
             as a matter of law                                                           14

    V.      Public Policy Demands that Attorney Debt
             Collectors who Commence Non-Payment Eviction
             Proceedings on behalf of Residential Landlords
             Exercise Due Diligence                                                        22

CONCLUSION                                                                                           25

## TABLE OF AUTHORITIES

Fair Debt Collection Practices Act ("FDCPA") (15 USC § 1692 *et seq.*)   *passim*

Fed. R. Civ. P. 56(c)   8

N.Y. Gen. Bus. L. § 349   23

New York City Admin. Code § 26-608   2

*Aguaiza v. Vantage Properties, LLC et al.,*
2009 N.Y. Misc. LEXIS 5700 (Sup. Ct. N.Y. Co. 2009),
modified 69 A.D.3d 422, 893 N.Y.S.2d 19,
2010 N.Y. App. Div. LEXIS 67 (1st Dept., 2010)   22

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,*
140 F.3d 101, 107 (2d Cir. 1998)   9

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)   9

*Bentley v. Great Lakes Collection Bureau, Inc.,*
6 F.3d 60, 63 (2d Cir. 1993)   13

*Bodur v. Palisades Collection, LLC
and Pressler & Pressler, LLC,* 829 F. Supp. 2d 246,
2011 U.S. Dist. LEXIS 144370 (SDNY 2011)   13

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)   8

*Clark v. Capital Credit & Collection Services, Inc.,*
460 F.3d 1162 (9th Cir. 2006)   14

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)   8, 9

*Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179 (SDNY 2012)   23

*DeCastro v. Bhokari,*
201 A.D.2d 382, 607 N.Y.S.2d 348 (1st Dep't 1994)   23

*Dowling v. Kucker Kraus & Bruh, LLP et al,*
2005 U.S. Dist. LEXIS 11000 (SDNY 2005)   3

*Ducrest v. Alco Collections, Inc.,* 931 F. Supp. 459 (M.D. La. 1996)   14

*Ellis v. Solomon and Solomon, P.C., et al.,*

591 F.3d 130; 2010 U.S. App. LEXIS 752 (2nd Cir. 2010)  10

*Fox v. Citicorp Credit Services*, 677 F.2d at 1514, 1516-17 (9th Cir. 1994)  15, 20

*Goldman v. Cohen*, 2004 U.S. Dist. LEXIS 25517 (SDNY 2004),
*aff'd* 445 F.3d 152 (2nd Cir. 2006)  14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 586 (1986)  9

*McStay v. I.C. System, Inc.,* 174 F. Supp. 2d 42 (SDNY, 2001)  14

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008)  10

*Jerman v. Carlisle, McNellie, Rini,*
*Kramer & Ulrich LPA, et al.,* 559 U.S. 573,
130 S. Ct. 1605,176 L. Ed. 2d 519, 2010 U.S. LEXIS 3480  9

*Ponce v. Sag Freshpond, LLC*, Supreme Court,
Queens Co., Index No. 15421/06, September 13, 2006 [Agate, J.]).  23

*Puglisi v. Debt Recovery Solutions, LLC,*
2010 U.S. Dist. LEXIS 6120 (SDNY 2010)  14

*Pultz v. Economakis*,
8 Misc 3d 1022[A], 803 N.Y.S.2d 20,
2005 NY Slip Op 51238[U], [Sup. Ct., NY Co. 2005] [Feinman, J.],  23

*Stonehart v. Rosenthal,*
2001 U.S. Dist. LEXIS 11566, 2001 WL 910771 (SDNY 2001)  14

*Pipiles v. Credit Bureau of Lockport, Inc*,
886 F.2d 22, 27 (2nd Cir. 1989)  15

*Reichert v. National Credit Systems, Inc.,*
531 F.3d 1002, 1005-6; 2008 U.S. App. LEXIS 16573 (9th Cir. 2008)  20

*Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996)  10, 13, 15

*Weisent v. Subaqua Corp.*,
847 N.Y.S.2d 899, 2007 N.Y. Slip Op. 51428(U)  23

*White v. First American Registry, Inc.,*
2007 U.S. Dist. LEXIS 18401, (SDNY, 2007)  23

*Woods v. Sieger, Ross & Aguire, LLC,*

2012 U.S. Dist. LEXIS 69972 (SDNY 2012)                              13

*Zimmerman, v. Portfolio Recovery Associates, LLC,*
2013 U.S. Dist. LEXIS 43744 (SDNY 2013)                          9, 13

**INTRODUCTION**

This memorandum, together with the within declaration of James B. Fishman, attorney for the plaintiff, the annexed exhibits and the plaintiff's Statement Pursuant to Local Rule 56.1, is respectfully offered by the plaintiff Rafael Lee ("Mr. Lee" or the "plaintiff") in support of his motion for an order, pursuant to FRCP § 56, granting partial summary judgment in his favor on liability and severing his damage claims for trial.

The plaintiff brought this action pursuant to the Fair Debt Collection Practices Act ("FDCPA") (15 USC § 1692 **et seq.**)  The complaint, filed on June 14, 2012, alleges that the defendants Kucker & Bruh, LLP ("K&B") and Alan Kucker "(Kucker") (collectively, the "defendants") violated various provisions of the FDCPA in connection with their attempt to collect a debt from the plaintiff that he did not owe.  The complaint further alleges that the defendants failed to provide accurate or sufficient verification of the alleged debt in response to the plaintiff's demand made under the FDCPA.

The defendants appeared in this action on July 9, 2012 and served a written answer denying many of the allegations of the complaint and asserting four affirmative defenses, including the claim that if any violation of the FDCPA occurred it was not intentional and resulted from a *bona fide* error, notwithstanding the presence of reasonable procedures adopted to avoid any such error.

Thereafter the parties exchanged document discovery.  In addition, depositions were conducted of the parties, as well as the non-party Mall Properties, Inc. ("MPI").  All fact discovery is now completed.

At a conference before the Court on April 2, 2013 the parties were directed to simultaneously submit their respective summary judgment motions on May 6, 2013.

That date was subsequently extended by the Court to May 16, 2013.

### Statement of Facts

The plaintiff is an 82 year old man who has resided at 810 West 183rd Street, Apartment 3D, New York, NY (the "subject apartment") since 1965. (See complaint, Exhibit A, ¶ 10; Deposition of Rafael Lee, Exhibit B, p. 10)  The plaintiff's tenancy at the subject apartment is governed by the New York City Rent Control Law.  (Ex. A, ¶ 11)  The plaintiff's landlord is Woodfin Properties, Inc. ("Woodfin").  (Ex. A, ¶ 13; lease agreement, Exhibit C)  Mall Properties, Inc. ("MPI") is the managing agent for the subject apartment and the building in which it is located.  (Exhibit A, ¶ 13)

Since at least 1995, the plaintiff has had a Senior Citizen Rent Increase Exemption ("SCRIE") issued by the New York City Department of Finance.  (Exhibit A, ¶ 14; SCRIE certificate, Exhibit E).  The SCRIE program provides a rent subsidy to low income, elderly rent controlled or rent stabilized tenants whose income is below a statutory threshold.  Under the program, eligible rent controlled and rent stabilized tenants are legally liable to pay only a portion of their lawful rent while the landlord receives a real estate tax abatement equal to the balance.  Moreover, it is illegal for landlords to collect any amount from a tenant for rent or other charges (including fuel charges) beyond the amount permitted under the SCRIE program.[1]    Landlords are not

---

[1] New York City Admin. Code § 26-608 provides, in pertinent part:

> It shall be illegal for a housing company to collect any amount for which a SCRIE subsidy provides credit or to withhold benefits from a tenant/cooperator entitled to a SCRIE subsidy and collection or retention of any such amount for a dwelling unit occupied by such eligible head of household shall be deemed a rent overcharge. Upon conviction therefor, the housing company and its directors and any employee responsible therefor, shall be guilty of a misdemeanor, punishable by a fine not to exceed one thousand dollars or imprisonment not to exceed six months, or both.

permitted to "opt out" of the SCRIE program and are instead required to participate in it.

The current legally collectable monthly rent controlled rent for the plaintiff's apartment is $790.30.  Since at least 1995, the plaintiff's SCRIE eligibility order has fixed his monthly rent obligation at $400.72. (Ex. E; SCRIE renewal, Exhibit F)  Each month, that amount is paid to MPI, on Woodfin's behalf, on or about the first of each month, by The Isaac H. Tuttle Fund, a private social service agency that provides social services assistance to elderly tenants such as the plaintiff. (Tuttle letter with March 2012 check, Exhibit G)

K&B is a law firm that primarily represents landlords in New York City. (Kucker Deposition, Exhibit H, p. 15-16)  K&B commences numerous proceedings in the New York City Housing Court on behalf of its landlord clients against residential tenants alleging non-payment of rent.  (Ex. H, p. 16)  As such, K&B is a "debt collector," as defined by the FDCPA.  (15 USC § 1692a(6)) Kucker is a senior and founding partner of K&B.  (Ex. H, p. 14)  Kucker is also a "debt collector" as defined by the FDCPA.[2]  There is no dispute that the plaintiff is a "consumer" within the meaning of the FDCPA or that the claim asserted against him by the defendants is a "debt" within the meaning of the statute.

In early 2012 Mall Properties, Inc. ("MPI"), the agent for the plaintiff's landlord Woodfin Realty Corp., began referring claims to K&B in connection with eviction proceedings for non-payment of rent to be brought against residential tenants in

---

[2] Although the defendants initially denied in their answer that they were "debt collectors" (Ex. S, ¶ 50), Kucker acknowledged at his deposition that both K&B and he are in fact debt collectors.  (Ex H, p. 23) Moreover, in **Dowling v. Kucker Kraus & Bruh, LLP et al.,** 2005 U.S. Dist. LEXIS 11000 (SDNY 2005), K&B was previously found by this Court to be a "debt collector" within the meaning of the FDCPA and Kucker conceded that his firm's business had not markedly changed since that determination.  (Ex. H, p. 25)

buildings managed by MPI.  (Exhibit H, p. 47)

On or about March 1, 2012 the plaintiff's March 2012 rent was paid to MPI by the Tuttle Fund.  That check was negotiated by MPI at that time. (Ex. G)

On March 15, 2012, K&B, on MPI's behalf, issued a statutory rent demand (the "demand") to the plaintiff demanding payment of $1125.23 consisting of March 2012 rent and various fuel charges.  (Exhibit I)  The demand was signed by Kucker. *id.* The demand was one of 19 that Kucker had signed that day involving MPI tenants, and he concededly signed it after giving it only the most cursory review. (Ex. H, p. 56; see generally Ex. H, p. 36-75)[3] The demand threatened the plaintiff with the commencement of eviction proceedings if the amount was not paid in three days. *id.*  Despite the fact that the printout showed a $400.72 payment in early March 2012, and was therefore questionable on its face, the defendants made no effort to determine from their client how that payment had been applied or whether it constituted payment of the plaintiff's March 2012 rent obligation.  Kucker did not contact anyone from MPI nor take any other steps to investigate the apparent discrepancy.  (Ex. H, p. 47)

On March 26, 2012 the defendants commenced a summary eviction proceeding against the plaintiff in the New York City Housing Court alleging non-payment of the $1125.23 set forth in the demand.  (***Woodfin Realty v. Lee,*** Index No. L&T 60394/12) (the 2012 summary proceeding)[4]

---

[3] Such a cursory review is not surprising given that K&B charges just $50.00 to prepare a statutory rent demand and $75.00 for the preparation of a petition to commence a non-payment eviction proceeding. (Exhibit H, p. 53)

[4] The defendants now concede that the plaintiff did not owe any sum to his landlord either when the demand was served or when the summary proceeding was commenced. (e.g., Ex. H, p. 104)

(Exhibit J)[5]  In connection with that proceeding, Kucker verified the truth of the allegations of the petition. (Exhibit J, p. 6)  In addition, Kucker confirmed, pursuant to the New York Uniform Court Rules (NYCRR) Part 130 that he conducted a "reasonable inquiry" before commencing the proceeding and that the contentions in the petition "are not frivolous."  (Exhibit J, p. 2)

Before verifying the notice of petition and petition, Kucker noticed that there was a discrepancy between MPI's more recent internal records and the court papers he was verifying.  But yet again, he conducted no investigation, instead simply affirming that the amounts were accurate. (Ex. H, p. 71-72)

On April 4, 2012 the plaintiff retained counsel to represent him in connection with the non-payment proceeding.  That day, his attorney issued a letter to the defendants pursuant to the FDCPA (15 USC § 1692g) disputing the validity of the debt and demanding verification of it.  (Exhibit K)  Also that day, the plaintiff's attorney sent to K&B a written verified answer to the eviction proceeding asserting, *inter alia*, that the plaintiff's March 2012 had already been paid, that he had a valid SCRIE and was therefore not liable for any of the rent or fuel charges sought in the petition.  (Exhibit L)

On April 6, 2012 the defendants responded to the plaintiff's demand for verification by sending the inaccurate printout from MPI they had initially relied upon, which reflected the March 6, 2012 payment of $400.72.  (Exhibit M)

Had the defendants made any reasonable inquiry before issuing the rent demand or commencing the nonpayment proceeding, they would likely have learned that the plaintiff had a SCRIE and actually owed no sum whatsoever to his landlord and would

---

[5] The plaintiff alleges that the issuance of the demand and the commencement of the summary eviction proceeding each constitute separate and distinct violations of 15 USC §  1692d, 1692e(2)(A), 1692e(5), 1692e(10) and 1692f.

have avoided violating the FDCPA.  Just six months earlier MPI itself issued a rent demand to the plaintiff which it later withdrew and conceded was improper because it failed to take into account the plaintiff's SCRIE.  (Exhibits N and O)   In November 2011 MPI specifically agreed that the plaintiff did not owe any money and agreed to correct its records.  (Ex. O)   And, in 2009 MPI, through other counsel, similarly demanded money from the plaintiff that he did not owe because of his SCRIE.   That demand was followed by the commencement of a summary nonpayment eviction proceeding in the New York City Housing Court.  (**Woodfin Realty v. Lee,** Index No. L&T 92802/09)  That proceeding was subsequently discontinued, with prejudice, pursuant to a stipulation dated February 23, 2010 that was "so ordered" by the court, which also provided for the payment of $750.00 in attorney's fees to the plaintiff. (Exhibit P)

Following receipt of the plaintiff's answer to the petition in the 2012 summary proceeding, which expressly advised that he had a SCRIE and therefore owed nothing to his landlord, the defendants failed to issue an amended response to the plaintiff's demand for verification of the debt acknowledging that he did not owe any sum whatsoever to his landlord, in violation of the express requirements of 15 USC § 1692g.

On April 13, 2012, the defendants offered to discontinue the eviction proceeding, **without prejudice,** which would have permitted the commencement of a new proceeding, for the same rent.  In response, the plaintiff demanded that the proceeding be discontinued, **with prejudice** and that the petitioner landlord pay the plaintiff's legal fees, in the amount of $1500.00. (Exhibit Q)  The defendants refused both demands. Thereafter, on May 17, 2012 the proceeding was sent to Judge Laurie Lau, for trial. Rather than proceed to trial the petitioner made an application to discontinue the

proceeding.  That application was granted upon the condition that the petitioner pay the plaintiff's legal fees, in the amount of $1500.00.  (Exhibit R)

### Procedural Posture of this Action

K&B appeared in this action *pro se* and served a written answer to the complaint on its, and Kucker's, behalf asserting, *inter alia*, the affirmative defense that if they violated the FDCPA their actions were not intentional but were the result of a *bona fide* error which occurred despite the maintenance of procedures designed to avoid the error, as provided by 15 USC § 1692k(c). (Exhibit S)

Thereafter, the parties engaged in document and deposition discovery.  The plaintiff was deposed by the defendants.  (Exhibit B)  The plaintiffs conducted the deposition of Kucker, both as a fact witness and as a FRCP 30b(6) witness on behalf of K&B and Joseph Lopez, a representative of the non-party MPI.  (Exhibits D and H)

On January 14, 2013, the defendants issued a subpoena ***duces tecum*** to the plaintiff's attorney demanding his deposition testimony as well as the production of his file from the summary eviction proceeding.  The defendants asserted they were entitled to engage in such discovery in connection with their claim for attorney's fees because, the alleged, this action was brought in bad faith and to harass the them, citing 15 USC § 1692k(a)(3).  By decision and order dated February 25, 2013 the Court (Francis, M.J.) quashed the subpoena finding that the discovery sought by the defendants was improper, for several reasons.  The Court also denied the defendants' application to reopen the plaintiff's deposition to require him to answer certain questions he had been directed not to answer, on attorney-client privilege grounds.

At the April 2, 2013 Court conference the defendants made an application to

compel a non-party witness, Paris Baldacci, to appear for a deposition and to produce documentation demanded pursuant to a subpoena *duces tecum.* The defendants sought such testimony and documents in an effort to advance the same "bad faith" claim that Magistrate Francis had previously rejected. The Court ruled, from the bench, that he subpoena was improper and barred the defendants from seeking deposition testimony or demanding documents on that issue.

On January 14, 2013, the defendants issued a subpoena *duces tecum* to the plaintiff's attorney demanding his deposition testimony as well as the production of his file from the summary eviction proceeding. The defendants asserted they were entitled to engage in such discovery in connection with their claim for attorneys fees because, the alleged, this action was brought in bad faith and to harass the them, citing 15 USC § 1692k(a)(3). By decision and order dated February 25, 2013 the Court (Francis, M.J.) quashed the subpoena finding that the discovery sought by the defendants was improper, for several reasons. The Court also denied the defendants' application to reopen the plaintiff's deposition to require him to answer certain questions he had been directed not to answer, on attorney-client privilege grounds.

## LEGAL ARGUMENT

### I.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bryant v. Maffucci*, 923 F.2d

979, 982 (2d Cir. 1991) (citing **Celotex Corp. v. Catrett,** 477 U.S. 317, 322-23 (1986)).

"[T]he moving party bears the initial burden of establishing that there are no genuine

issues of material fact." **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 256 (1986);

**See also, Celotex Corp**., 477 U.S. at 323.  In making a summary judgment

determination, the Court must resolve all "facts, inferences and ambiguities in a light

most favorable to the non-moving party." **Matsushita Elec. Indus. Co. v. Zenith Radio**

**Corp.,** 475 U.S. 574, 586 (1986); **Ametex Fabrics, Inc. v. Just In Materials, Inc.,** 140

F.3d 101, 107 (2d Cir. 1998).


**II.    A Reasonable Jury Could Find that the Defendants violated the FDCPA**

**A. The Structure and purpose of the FDCPA**

The United States Supreme Court stated, in 2010,

> Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt
> collection practices, to ensure that debt collectors who abstain from such
> practices are not competitively disadvantaged, and to promote consistent state
> action to protect consumers. 15 U.S.C. § 1692(e).  The Act regulates interactions
> between consumer debtors and "debt collector[s]," defined to include any person
> who "regularly collects . . . debts owed or due or asserted to be owed or due
> another." §§ 1692a(5), (6). Among other things, the Act prohibits debt collectors
> from making false representations as to a debt's character, amount, or legal
> status, § 1692e(2)(A); communicating with consumers at an "unusual time or
> place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene
> or profane language or violence or the threat thereof, §§ 1692d(1), (2). See
> generally§§ 1692b-1692j; **Heintz** v. **Jenkins**, 514 U.S. 291, 292-293, 115 S. Ct.
> 1489, 131 L. Ed. 2d 395 (1995)  *559 U.S. 573; 130 S. Ct. 1605, 176 L. Ed. 2d*
> *519,*

**Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al.** 559 U.S. 573, 130 S.

Ct. 1605,176 L. Ed. 2d 519, 2010 U.S. LEXIS 3480.

In **Zimmerman, v. Portfolio Recovery Associates, LLC,** 2013 U.S. Dist. LEXIS

43744 (SDNY 2013), this Court recently confirmed,

In enacting the FDCPA, Congress sought "to eliminate[e] abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Jacobson v. Healthcare Fin. Servs., Inc*., 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996) (describing legislative intent to impose strict liability in order to curb "unscrupulous practices" in debt collection industry).

The FDCPA contains an express private right of action permitting aggrieved individuals to sue in any court of competent jurisdiction to recover actual damages, statutory damages of up to $1000.00, plus attorney's fees.  15 USC §§ 1692k(a)(1-3). Class actions are also available, with class recovery capped at the lesser of $500,000 or 1% of the defendant's net worth, plus attorney's fees. 15 USC §1692k(a)(2)(B).

In determining the amount of liability in an individual action, the Court is required to consider a variety of factors, including "the extent to which such noncompliance (with the Act) was intentional."  15 USC §1692k(b).

### B. The allegations against the defendants

The plaintiff alleges that the defendants violated the following provisions of the FDCPA:[6]

●      15 USC § 1692d, which bars a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;

●      15 USC § 1692e(2)(A) which bars a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of any debt, including, the character, amount, or legal status of any debt;

●      15 USC § 1692e(5) which bars a debt collector from threatening any action that cannot legally be taken;

●      15 USC § 1692e(10) which bars a debt collector from using any false representation or deceptive means to collect or attempt to collect any debt;

---

[6] Although the complaint alleges that the defendants violated 15 USC § 1692e(4), that allegation was made in error and is withdrawn.

- 15 USC § 1692f, which bars a debt collector from using any unfair or unconscionable means to collect or attempt to collect a debt, including the collection of any amount (including any charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and

- 15 USC § 1692g, which requires debt collectors to cease debt collection activity until they provide verification of the debt, if such debt is disputed by the consumer within 30 days of the initial communication from the debt collector.

The facts undeniably establish that the defendants attempted to collect a consumer debt from the plaintiff that he did not owe and in fact was illegal to collect or attempt to collect.  The facts further establish that once the defendants undeniably had actual knowledge that the plaintiff did not owe any sum to their client they failed and refused to issue an accurate response to his demand for verification of their claim. Finally, the facts establish that the defendants continued to engage in collection activity by failing and refusing to discontinue the claim, **with prejudice**, without providing accurate verification of their claim.

**C. The documentary evidence and deposition testimony fully establish that the defendants are subject to the FDCPA and that they violated it in their attempt to collect a debt from the plaintiff.**

It is not disputed that the plaintiff is a "consumer" as defined by the FDCPA.[7]  Nor is it disputed that the defendants are "debt collectors" as that term is defined by the FDCPA[8] or that that the claim the defendants' sought to collect from the plaintiff is a

---

[7] The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 USC § 1692a(3).

[8]  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6).

"debt," as that term is defined by the FDCPA.[9]  Nor is it disputed that the plaintiff did not

owe any amount to his landlord client at the time the rent demand was served or when

the summary proceeding was commenced.  (Ex. D, p. 104)

There can be no serious dispute therefore that the defendants violated the

FDCPA by demanding that the plaintiff pay rent and fuel charges that he did not owe or

face eviction from his home of over 45 years.

### III. The FDCPA, with few exceptions not relevant here, is a strict liability statute.  As such, the plaintiff is not required to establish that the defendants' conduct was knowing or intentional

It has long been the law of this Circuit, as well as every other circuit court, that

except where an intent requirement is expressly set forth, the FDCPA is a strict liability

statute and that plaintiffs are not required to establish either a knowing or intentional

violation in order to prevail.[10]  Thus, it is irrelevant to a finding that the FDCPA has been

violated whether or not the defendants knew that the plaintiff had a SCRIE and was

therefore not liable to their client for the rent and fuel charges sought in the rent demand

or petition filed in the Housing Court.  In ***Ellis v. Solomon and Solomon, P.C., et al.,***

591 F.3d 130; 2010 U.S. App. LEXIS 752 (2nd Cir. 2010), the Second Circuit stated,

---

[9] The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal family or household purposes, whether or not such obligation has been reduced to a judgment."  15 USC § 1692a(5).

[10] Several sections of the FDCPA contain an intent component, none of which are at issue here, which clearly show that where Congress intended to require intent in the Act it expressly said so. See, *e.g.* § 1692d(5) "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number"; § 1692e(4) "The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." § 1692e(5) "The threat to take any action that cannot legally be taken ***or that is not intended to be taken.***  (emphasis added) § 1692e(8) "communicating or threatening to communicate to any person credit information which is known or which should be known to be false…"

To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. **The Act "is a strict liability statute**, and the degree of a defendant's culpability may only be considered in computing damages." **Bentley v. Great Lakes Collection Bureau, Inc.,** 6 F.3d 60, 63 (2d Cir. 1993) (internal citation omitted) (citing **Clomon v. Jackson,** 988 F.2d at 1320; 15 U.S.C. § 1692k(b)). (emphasis added)

Fourteen years earlier, the Second Circuit stated, **Russell v. Equifax A.R.S.,** 74 F.3d 30, 1996 U.S. App. LEXIS 1042 (2nd Cir. 1996),

Because **the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector** to be entitled to damages. However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its "violation [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." § 1692k(c). Finally, the trial court understandably thought the Act requires that defendant act intentionally, because the Act provides that a debt collector may escape liability if it can demonstrate that its violation of the Act was unintentional and a result of a bona fide error despite procedures to avoid the error. Nonetheless, plaintiff need not show intentional conduct under the Act to be entitled to damages. The unintentional acts of defendant are a defense to be raised against a claimed violation. Defendant offered no proof on this issue; it does not contest the plaintiff's allegation that it mailed the two collection notices. Once it is shown that defendant sent the February and March notices and that they failed to fulfill the requirements of the Act, strict liability is imposed. *See Bentley,* 6 F.3d at 63. (emphasis added)

In **Bentley v. Great Lakes Collection Bureau, Inc.,** 6 F.3d 60, 1993 U.S. App. LEXIS 23758 (2nd Cir. 1993) the Second Circuit held that,

The sixteen subsections of section 1692e provide a nonexhaustive list of practices that fall within the statute's ban. These practices include "the threat to take any action that cannot legally be taken or that is *not intended to be taken.*" 15 U.S.C. § 1692e(5) (emphasis original). A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, **Clomon,** 988 F.2d at 1318, and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA, *see* 15 U.S.C. § 1692k.

*See also,* **Zimmerman, supra; Woods v. Sieger, Ross & Aguire, LLC,** 2012 U.S. Dist. LEXIS 69972 (SDNY 2012); **Bodur v. Palisades Collection, LLC and Pressler & Pressler, LLC,** 829 F. Supp. 2d 246, 2011 U.S. Dist. LEXIS 144370 (SDNY 2011);

***Puglisi v. Debt Recovery Solutions, LLC,*** 2010 U.S. Dist. LEXIS 6120 (SDNY

2010).[11]

### IV.   The Defendants cannot establish a *bona fide* error defense to the complaint's allegations, as a matter of law

Section 1692k(c) of the FDCPA provides,

**Intent.** A debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The defendants' fourth affirmative defense asserts,

(T)o the extent a violation of any provision of 15 USC § 1692 occurred, which violation is expressly denied, such violation was not intentional and resulted from a *bona fide* error notwithstanding reasonable procedures adopted to avoid any such error.

Merely asserting that a violation of the FDCPA was not intentional, however, is

insufficient to establish that the defendant is entitled to immunity pursuant to the *bona*

---

[11] The defendants asserted in their pre-conference letter to the Court that the FDCPA requires the plaintiff to establish that they intended to violate the statute, relying on **Stonehart v. Rosenthal,** 2001 U.S. Dist. LEXIS 11566, No. 01 Civ. 651, 2001 WL 910771 (SDNY 2001). Presumably, the defendants will continue to make that claim in their summary judgment motion. However, the defendants' reliance on **Stonehart** is misplaced. That case, which primarily involved allegations under the Fair Credit Reporting Act (15 USC § 1681 et seq.), contained the anomalous statement "(T)o state a claim under section 1692e(2) of the FDCPA, Stonehart must show that Rosenthal knowingly misrepresented the amount of the debt when he verified the complaint." With the exception of **McStay v. I.C. System, Inc.,** 174 F. Supp. 2d 42 (SDNY, 2001) **no** court in this Circuit has followed **Stonehart** on this point. In fact, **Stonehart's** FDCPA holding was expressly rejected by this Court in **Goldman v. Cohen** 2004 U.S. Dist. LEXIS 25517 (SDNY 2004) and subsequently affirmed by the Second Circuit, 445 F.3d 152 (2nd Cir. 2006). Judge McKenna expressly stated in his District Court decision in **Goldman** that the FDCPA is a strict liability statute and added, at footnote 11, "Cohen cites cases that allocate the burden of proof differently. See **Stonehart v. Rosenthal,** No. 01 Civ. 651, 2001 U.S. Dist. LEXIS 11566, (S.D.N.Y. Aug. 13, 2001) (citing Ducrest v. Alco Collections, Inc., 931 F. Supp. 459 (M.D. La. 1996)) in holding that "to state a claim under section 1692e(2) of the FDCPA, [plaintiff] must show that [defendant] knowingly misrepresented the amount of the debt when he verified the complaint"). However, this Court finds those holdings contrary to the plain language of § 1692k(c), and is bound to follow the law as stated by the Second Circuit."

Subsequently, **Stonehart's** FDCPA holding was also expressly rejected by the Ninth Circuit in **Clark v. Capital Credit & Collection Services, Inc.,** 460 F.3d 1162 (9th Cir. 2006). ("allowing a debt collector to escape liability for unintentional violations would render the **bona fide** error defense superfluous." 460 F.3d at 1176.

The courts have plainly recognized that if **Stonehart's** FDCPA holding were followed it would eviscerate the **bona fide** error provision and it therefore has no precedential authority whatsoever and the defendants' attempt to suggest otherwise is fallacious.

*error* defense.  Instead, a defendant must also establish that it maintains reasonable procedures to avoid the error, that it used those procedures with respect the plaintiff and that it violated the FDCPA despite having taking those steps.[12]

The elements of the FDCPA's ***bona fide*** error defense are well established.  The statutory language mandates that the collector prove each part of the defense, i.e. that (1) "the violation was not intentional" and (2) "resulted from a ***bona fide*** error" and (3) that the debt collector maintained additional reasonable preventive procedures to avoid the error. This safe harbor is available only if each component is proven. ***Fox v. Citicorp Credit Services***, 677 F.2d at 1514, 1516-17 (9th Cir. 1994); ***Russell v. Equifax A.R.S.,*** 74 F.3d 30, 36 (2nd Cir. 1996); ***Pipiles v. Credit Bureau of Lockport, Inc***, 886 F.2d 22, 27 (2nd Cir. 1989).

The deposition and document discovery in this case fully demonstrate that the defendants have not established, and cannot establish, that they are entitled to protection under 1692k(c) because they do not have ***any*** procedures in place to avoid the type of error that occurred here, let alone reasonable ones.  As a result, the defendants' error did not occur despite the presence of such procedures but because of the ***absence*** of them and no reasonable jury could find otherwise.

The plaintiff served a document demand upon the defendants prior to conducting the FRCP 30b(6) examination of K&B.  The plaintiff requested production of, ***inter alia,***

2. Any and all internal documents, memoranda, guidelines, policies, rules, practices or procedures regarding the use of collection notices or collection efforts by the defendants and its employees.

3. Any and all operation manuals or any other such documentation regarding the

---

[12] The defendants have therefore not properly pled a ***bona fide*** error defense because their answer fails to allege that they actually employed their allegedly adopted procedures in this case.

use of collection notices or collection efforts by the defendants and its employees.

4. All documentation relating to procedures, rules or guidelines utilized to maintain compliance with the Fair Debt Collection by the defendants and its employees.

5. All documentation related to the defendants' procedures or policies to provide verification of any alleged debt.

6. Any and all documentation, including forms or intake sheets that defendants provide to their clients to describe and substantiate rent claims to be asserted against residential tenants. (See Ex. 1 to Ex. H)

At that examination, the defendants advised that they had "no responsive documents" to produce in response to any of the above document requests.  (Exhibit H, p. 9)  Thus, it is not disputed that the defendants do not have any formal procedures to avoid the error that occurred here.

Kucker was asked to describe the specific procedures adopted and maintained by him and his office to avoid violating the FDCPA.  He testified, both as a FRCP 30b(6) witness as well as a fact witness, as follows:

Q.  Now, specifically, your fourth affirmative defense, which reads, "To the extent of violation of any provision of 15 USC § 1692 occurred, which violation is expressly denied, such violation is not intentional and resulted from a bona fide error, notwithstanding reasonable procedures adopted to avoid any such error," are you familiar with that?

A.  Yes.

Q.  And are you familiar with the bona fide error provision of the FDCPA?

A.  Yes.

Q. And what is your understanding as to what the bona fide error provision provides?

A.  Pretty much -- I pretty much stated it in the fourth affirmative defense.

16

Q.  So is it your testimony that if there was a violation that you didn't do it intentionally?

A.  It's certainly my testimony that we didn't do it intentionally.

Q.  And is it also your testimony that your firm, you and/or your firm had reasonable procedures that had been adopted to avoid the error?

A.  Yes. It's called my law license.

Q.  What other reasonable procedures, if any, were adopted to avoid the error, if any?

A.  I believe -- I believe that as an attorney, since I am ethically mandated to understand the law, that my law license is -- and my good standing in the bar is a reasonable -- are reasonable procedures to undertake to -- to -- are reasonable procedures under the statute.

Q.  What reasonable procedures were adopted by your firm to avoid the error?

A.  Well, to the extent that -- as the law firm is responsible for all its paralegals and its process servers, everything is under the auspices of the firm, the attorney and its licenses and the good standing at the bar around the knowledge required to practice and to -- I assume your question -- and stop me if you don't want me to, but I believe in this circumstance the difference between debt collectors who are not attorneys and debt collectors who are attorneys, because certainly whether I have a manual or I go listen to somebody lecture, it doesn't provide any greater obligation for my firm to have procedures to avoid errors in the litigation than my requirement that as attorneys we follow the law and don't violate it in the process.

Q.  So what specific procedures did you and your firm adopt to avoid violating the Fair Debt Collection Practices Act?

A.  I believe I answered the question.  The procedures are

Q.  I'm asking you now specifically

A.  The same procedures that any attorney has in his office to remain in good standing as an attorney admitted to practice law in the state and federal courts.

 Q.  I understand you're talking about the general practice of law. But I'm not talking about the general practice of law.

A.  There are no –

Q.  Excuse me. Let me finish. I'm asking you about the avoidance of violations of the Fair Debt Collection Practices Act?

A.  I don't believe New York recognizes any specialties in the practice of law, besides, perhaps, patents. So the idea that I have to become a specialist in any area of law my firm does to be able to rely on the bona fide error defense I believe is incorrect as a legal statement.

Q.  I'm sorry. I didn't ask you about specialties. I only asked you about avoiding violation of FDCPA.

A.  I answered the question at this point. (Exhibit H, pp. 94-97)

Kucker further testified that his firm never hired, or even consulted with, FDCPA compliance counsel to ensure that it is complying with the FDCPA, that he never took a CLE course on the FDCPA and that nobody in his firm was ever required to do so. (Exhibit H, p. 83, lines 3-22)

Plainly, Kucker failed to demonstrate the existence of any reasonable procedures to avoid violating the FDCPA by the defendants.  The only thing Kucker managed to demonstrate is an ignorance of the requirements of the FDCPA in general and of the **bona fide** error defense in particular.

Moreover, even in the absence of formal procedures, the defendants had no informal mechanisms in place that would have avoided the error.  For example, both the defendants' litigation paralegal and Kucker, at worst, either overlooked or ignored the fact that the "documentation" provided by their client was questionable on its face in that it showed a rent payment being received, in the exact amount of the plaintiff's SCRIE share of the rent, during the same month when the landlord was claiming no rent was paid. (See Exhibit M)  At best, the defendants misunderstood the document by

"assuming" that the March 2012 payment was applied retroactively to previous rent

arrears allegedly owed by the plaintiff.  (Exhibit H, p. 126, line 2)

Kucker testified on this point as follows:

Q.  According to the delinquency report [Exhibit M] it has got a date next to it of March 1, 2012, correct?

A.  Correct.

Q.  That is the amount that was due at that time, correct, for rent? I'm not asking about any other categories, just rent.

A.  I would understand this to mean that March 1 rent of 790.30 was due and owing.

Q.  Okay. And is it your understanding from looking at this that that is the amount of the monthly rent?

A.  It's my understanding that that is what the client transmitted to us as being the amount of the monthly rent.

Q.  Now, I'm going to ask you to look to the portion of the document that is shaded where it says "last payment"?

A.  Mm-hmm.

Q.  3/6/2012, $472. Do you see that?

A.  Yes.

Q.  What do you understand that to mean?

A.  I would understand that to mean that the tenant paid that amount and it was applied previous -- my understanding would be that it was applied to previous amounts owed to leave this balance.

Q.  Well, you see that it was dated March 6th, correct?

A.  Correct.

Q.  And that would be after the March rent was due, right?

A.  Right.

Q.  So what is the basis for your belief that this was applied to -- that this

A.  General accounting methods allow the client to apply payments to the oldest outstanding arrears unless otherwise designated by the tenant.

Q.  But did you know for a fact or do you know for a fact when you first saw this that that is what happened here?

A.  No. No.

Q.  Did it occur to you maybe to ask the client what the payment referred to?

A.  It did not occur to me to ask the client nor did I believe it was my responsibility to do so.  (Exhibit H, pp. 59-61)

In **Reichert v. National Credit Systems, Inc.,** 531 F.3d 1002, 1005-6; 2008 U.S. App. LEXIS 16573 (9th Cir. 2008) the Ninth Circuit rejected a debt collector's attempt to establish a **bona fide** error defense in connection with a debt allegedly owed to the plaintiff's landlord, where the conduct was alleged to violate the prohibition against collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).   The court stated,

> The FDCPA makes debt collectors liable for violations that are not knowing or intentional. *See* **Clark,** 460 F.3d at 1176 & n.11. It provides a "narrow exception to strict liability," however, for **bona fide** errors. *Id.* at 1177….
> In concluding that the FDCPA imposes strict liability, we reasoned in <u>Clark</u> that allowing a debt collector to escape liability for unintentional violations would render the **bona fide** error defense superfluous.  460 F.3d at 1176.
>
> The **bona fide** error defense is an affirmative defense, for which the debt collector has the burden of proof. **Fox v. Citicorp Credit Servs.,** *Inc.,* 15 F.3d 1507, 1514 (9th Cir. 1994). ***The defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable. Clark, 460*** F.3d at 1177. The defense requires the defendant to show that it maintains procedures to avoid errors. *Id.* at 1176-77. We have held that a debt collector failed to meet its burden under the defense when it did not

20

produce evidence of "reasonable preventive procedures" aimed at avoiding the errors. *See Fox,* 15 F.3d at 1514.

The debt collection agency now contends that under *Clark,* the landlord-creditor's submission of accurate information in the past entitled the agency to rely on the creditor's representations in this case, even *though the information was questionable on its face.* (emphasis added)

…..

NCS failed to carry its burden of establishing that its reliance upon the creditor was reasonable.  If the *bona fide* error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. *See Wilhelm,* 519 F.3d at 421. Only then is the mistake entitled to be treated as one made in good faith. Because NCS submitted only a conclusory declaration stating that it maintained procedures, we hold that it failed to establish a bona fide error defense under the FDCPA. (emphasis added)

Kucker testified that his firm did not begin to represent MPI in connection with alleged non-payment of rent cases until January 2012, just two months before the defendants attempted to enforce a claim against the plaintiff. (Ex. H, p. 47)  The defendants therefore did not have a very lengthy period of representation of this management company.  Thus, the defendants cannot, and in fact do not, allege, as the defendant in *Reichert* did, that they were entitled to rely on a history of accurate information from their client.

The defendants' *bona fide* error defense must be denied by the Court because they have woefully failed to establish a right to avoid liability for violating the FDCPA, as a matter of law.

### V.   Public Policy Demands that Attorney Debt Collectors who Commence Non-Payment Eviction Proceedings on behalf of Residential Landlords Exercise Due Diligence

The defendants are not just debt collectors seeking the payment of money.  As attorneys who regularly represent landlords in the New York City Housing Court, they also seek to evict residential tenants from their homes if that payment is not made. Thus, the scenario presented in this case is quite different from cases where the payment of money only is sought, i.e. credit card debts, auto loans, student loans or hospital bills.  In those cases, the most egregious result a defendant debtor faces is a money judgment, a possible wage garnishment or an attachment of personal property. Under no scenario, can non-payment of those claims result in the loss of one's home.

A summary non-payment eviction proceeding however, by statute, is a relatively fast and relatively cheap mechanism for landlords to evict their tenants for non-payment, even for as little a single missed rent payment.[13]  (See, generally, NY Real Property Actions and Proceedings Law, Art. 7)  In New York City there are over a million tenants whose tenancies are subject to either the Rent Control law (such as the plaintiff) or the Rent Stabilization Law.  Those tenants, who generally pay rents far below the market rate (including the plaintiff), present an enticing target to landlords eager to charge more for their apartments.

It is well established that unscrupulous landlords, given the strong financial incentives, often bring eviction proceedings falsely claiming that rent has not been paid. See, e.g. ***Aguaiza v. Vantage Properties, LLC et al.,*** *2009 N.Y. Misc. LEXIS 5700 (Sup. Ct. N.Y. Co. 2009) modified 69 A.D.3d 422, 893 N.Y.S.2d 19, 2010 N.Y. App. Div.*

---

[13] Indeed, Kucker testified that his firm charges just $50.00 to prepare a statutory rent demand and $75.00 for the preparation of a petition to commence a non-payment eviction proceeding.  (Exhibit H, p. 53)

*LEXIS 67* (1st Dept., 2010) ("Plaintiffs allege a fact pattern of deceptive/harassing

activities specific to each Plaintiff. And the common threads collectively binding

Plaintiffs *inter alia* involve Defendants commencing baseless non-

payment proceedings…arbitrarily refusing to accept timely tendered rent payments…,

prosecuting bogus non-primary residency and/or illegal sublet holdover proceedings…

making baseless refusals to offer lease renewals and arbitrarily demanding proof of

identity from Plaintiffs without good cause to maintain their rent stabilized tenancy

rights.")

See also, **Charron v. Pinnacle Group NY LLC,** 874 F. Supp. 2d 179 (SDNY

2012) (Plaintiffs brought suit pursuant to the federal civil racketeering statute, 18 U.S.C.

§ 1962(c), and New York's Consumer Protection Act, N.Y. Gen. Bus. L. § 349, alleging

that

> Defendants….acquired several hundred apartment buildings during the real
> estate boom between 1999 and 2006, and then engaged in fraud and
> harassment to drive rent-regulated tenants out of their apartments. Each vacancy
> in a rent-regulated apartment would have entitled Pinnacle to a large increase in
> the legal rent — in some, to complete deregulation of the apartment on a going
> forward basis… Plaintiffs alleged that  Pinnacle…thereby sought to: (1)
> circumvent New York law by deregulating the apartments and obtaining rents in
> excess of those legally permitted, and (2) sell the illegally deregulated
> apartments in the then-booming condominium market.
>
> The SAC alleges that Pinnacle carried out these activities by**, (*inter alia*) filing
> meritless eviction proceedings (more than 5,000 during a 29-month period).**
> (emphasis added)[14]

---

[14] Tenants who are sued in the Housing Court also suffer the harm of being "blacklisted" from renting
another apartment, virtually anywhere in the country, because tenant screening bureaus routinely collect
and report court data and sell it to prospective landlords.  See, **Weisent v. Subaqua Corp.**, 847 N.Y.S.2d
899, 2007 N.Y. Slip Op. 51428(U) (Supreme Court, N.Y. Co. 2007) (injunction barring landlord from
commencing a summary eviction proceeding against a tenant in the Housing Court because doing so
results in blacklisting.  "…regardless of whether or not a tenant prevails in the Housing Court, his or her
name may appear on the blacklist', making "the finding of a rental apartment potentially very difficult if not
impossible", particularly for a tenant of relatively modest means (**Pultz v. Economakis,** 8 Misc 3d
1022[A], 803 N.Y.S.2d 20, 2005 NY Slip Op 51238[U], [Sup. Ct., NY Co. 2005] [Feinman,
J.], *citing* **DeCastro v. Bhokari,** 201 A.D.2d 382, 607 N.Y.S.2d 348 [1st Dep't 1994]; *see also*, **Ponce v.**

Landlord lawyers, such as the defendants, blithely commence non-payment of rent eviction proceedings, on the flimsiest of documentation, if any, in the hope that perhaps a tenant will fail to respond and then be evicted from their home.  This case certainly illustrates a "garden variety" example of a landlord law firm that is oblivious to its obligations under the FDCPA and is willing to commence non-payment eviction proceedings where there is little documentation to support the claim or where the limited documentation it does have is questionable or ambiguous at best.

The Court should send a strong message to the defendants in particular, and to the New York City landlord bar generally, that the commencement of summary non-payment eviction proceedings, where the tenant does not in fact owe the rent and where the law firm has no procedures to prevent errors, will result in FDCPA liability.

---

*Sag Freshpond, LLC*, Supreme Court, Queens Co., Index No. 15421/06, September 13, 2006 [Agate, J.]).  Therefore… this Court finds that plaintiff has demonstrated she will suffer irreparable harm if the injunctive relief sought is not granted."

*See also*, *White v. First American Registry, Inc., 2007 U.S. Dist. LEXIS 18401, (SDNY, 2007)* ("This lawsuit arises by reason of the nature of defendants' business, which consists of selling landlords the opportunity to consult a list of individuals who have been involved in landlord-tenant litigation. As defendants doubtless well understand, risk averse landlords are all too willing to use defendants' product as a blacklist, refusing to rent to anyone whose name appears on it regardless of whether the existence of a litigation history in fact evidences characteristics that would make one an undesirable tenant. Thus, defendants have seized upon the ready and cheap availability of electronic records to create and market a product that can be, and probably is, used to victimize blameless individuals.")

**CONCLUSION**

Based upon the foregoing, together with the documents submitted herewith, it is respectfully submitted that the plaintiff is entitled to an order, pursuant to FRCP 56, granting partial summary judgment in his favor on liability and severing his damage claims for trial.  The plaintiffs have fully established that the defendants violated the Fair Debt Collection Practices Act and that violation cannot be excused as a ***bona fide*** error.

Dated: New York, NY
          May 16, 2013

                              Respectfully submitted,

                              _____/s/_____
                              JAMES B. FISHMAN (jbf 8998)
                              FISHMAN & MALLON, LLP
                              305 Broadway  Suite 900
                              New York, NY 10007
                              212 897-5840
                              *www.nyctenantslaw.com*

On the Memo:

James B. Fishman
Susan K. Crumiller