UNITED STATES DISTRICT COURT                     Docket No. 12 CV 4662
SOUTHERN DISTRICT OF NEW YORK                     (LBS)
RAFAEL LEE,

                              Plaintiff,

          -against-

KUCKER & BRUH, LLP and
ALAN D. KUCKER,

                              Defendants.


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

JAMES B. FISHMAN (jbf 8998)
SUSAN K. CRUMILLER
FISHMAN & MALLON, LLP
305 Broadway  Suite 900
New York, NY 10007
212 897-5840
www.nyctenantslaw.com
Attorneys for the Plaintiff

## TABLE OF CONTENTS

INTRODUCTION ……………………………………………………  1

ARGUMENT

    I.    **The FDCPA is a Strict Liability Statute and
the Defendants Have Not  Established, and
Cannot Establish, a *Bona Fide* Error Defense** ………………  2

    II.    **The Complaint States Claims that the
Defendants Violated FDCPA Sections
1692d, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f** …………… 14

    III.    **The Defendants' Attempt to Create a Requirement
of a Knowing and Intentional Violation of the FDCPA
Where None Exists is Legally Baseless** …………………..…… 17

    IV.    **K&B Violated FDCPA § 1692g By Failing to
Provide Verification of the Alleged Debt and
Then by Refusing to Discontinue Litigation
With Prejudice and Upon Payment of
Reasonable Attorney's Fees** …………………………………….. 21

CONCLUSION ……………………………………………………… 24

# TABLE OF AUTHORITIES

Fair Debt Collection Practices Act ("FDCPA")
(15 USC § 1692 *et seq.*)                                              *passim*

Fed. R. Civ. P. 56(c)                                                      8

NYC Administrative Code §§ 27-2004(a)(48),
27-2005(d), 27-2115(h) ***et seq.*** (NYC Local Law 7, 2008)              13

NY CPLR § 3217(a)                                                          21

***407 East 81 Realty LLC v. Creighton***,
N.Y.L.J., Oct. 13, 2010 (Civ. Ct. N.Y. Co.)                               21

***Acheampongtieku v. Allied Interstate, Inc.***,
2005 U.S. Dist. LEXIS 17901 (SDNY 2005)                                    9

***Bentley v. Great Lakes Collection Bureau, Inc.***,
6 F.3d 60, 63 (2d Cir. 1993)                                            6, 19

***Bleich v. The Revenue Maximization Group, Inc.***,
233 F.Supp. 2d 496 (E.D.N.Y. 2002)                                        18

***Castro v. ARS Nat'l Servs., Inc.***,
2000 U.S. Dist. LEXIS 2618,
2000 WL 264310, at *2 (S.D.N.Y. 2000)                                      6

***Clark v. Capital Credit & Collection Servs., Inc.***,
460 F.3d 1162 (9th Cir. 2006)                                          10, 18

***Clomon v. Jackson,*** 988 F. 2d 1314 (2d Cir. 1993)                    19

***Derisme v. Hunt Leibert Jacobson, PC,***
880 F. Supp 339 (D. Conn., 2012)                                          13

***Ducrest v. Alco Collections, Inc.***,
931 F. Supp. 459 (M.D. La. 1996)                                          17

***Ellis v. Solomon and Solomon,***
591 F.3d 130, 2010 U.S. App. LEXIS 752 (2d Cir 2010)                       6

***Foti v. NCO Fin. Sys.,*** 424 F. Supp. 2d 643, 661 (SDNY 2006)          6

*Gathuru v. Credit Control Servs.,*
623 F. Supp. 2d 113, 123 (D. Mass. 2009)                    8

*Goldman v. Cohen,*
2004 U.S. Dist. LEXIS 25517 (SDNY 2004),
*aff'd* 445 F.3d 152 (2nd Cir. 2006)                        17

*Hawkins-El III v. First American Funding, LLC,*
891 F.Supp. 2d 402 (E.D.N.Y. 2012)                         18

*Hess v. Cohen & Slamowitz LLP,*
637 F.3d 117, 125 2011 U.S. App. LEXIS 3512 (2d Cir 2011)   7

*Isham v. Gurstel, Staloch & Chargo, P.A.,*
2010 U.S. Dist. LEXIS 102407 (D. Ariz. July 7, 2010)        8

*Jacobson v. Healthcare Financial Services, Inc.*
516 F.3d 85, *; 2008 U.S. App. LEXIS 3144, (2nd Cir. 2008)  24

*Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997)          10

*Jerman v. Carlisle, McNellie,*
*Rini, Kramer & Ulrich LPA,* 559 U.S. 573 (2010)            4

*Johnson v. Capital Mgmt. Servs.,*
2011 U.S. Dist. LEXIS 138023,
2011 WL 6012509, at *6 (W.D.N.Y. 2011)                     18

*Johnson v. Riddle*, 443 F.3d 723 (10th Cir. 2006)         10

*Katz v. Asset Acceptance, LLC,*
2006 U.S. Dist. LEXIS 86634 (EDNY 2006)                     9

*Liant Record LLC v. Karabell,*
NYLJ, 12/30/09, p. 26, col. 3 (Civ. Ct. N.Y. Co.)          22

*McCollough v. Johnson, Rodenberg & Lauinger,*
610 F. Supp. 2d 1247 (D. Mont. 2009), *aff'd* 637 F.3d 939,
2011 U.S. App. LEXIS 4072 (9th Cir. 2011)                 8, 10

*McStay v. I.C. System, Inc.,*
174 F.Supp. 2d 42 (S.D.N.Y. 2001)                          18

*Miller v. Gaess,*
N.Y.L.J., 10/23/09 p. 25, col. 1 (Civ. Ct. N.Y. Co.)                    22

*Miller v. Wolpoff & Abramson, LLP,*
321 F.3d 292, 304-05 (2d Cir. 2003)                                     7

*Miller v. Wolpoff & Abramson, LLP,*
471 F. Supp. 2d 243, 251 (E.D.N.Y. 2007)                               7

*Mirabal v. General Motors Acceptance Corp.,*
537 F.2d 871 (7th Cir. 1976)                                           8

*Palmer v. Wilson,* 502 F.2d 860 (9th Cir. 1974)                        9

*Reichert v. Nat'l Credit Sys.,* 531 F.3d 1002 (9th Cir. 2008)          8, 9, 10

*Russell v. Equifax A.R.S.,* 74 F.3d 30 (2d Cir. 1996)                  19

*Smith v. Transworld Systems, Inc.,*
953 F.2d 1025, 1992 U.S. App. LEXIS 410 (6th Cir. 1992)               20

*State v. 820 Associates,*
116 Misc. 2d 901, 456 N.Y.S.2d 604,
1982 N.Y. Misc. LEXIS 3975  (Sup. Ct. N.Y. Co. 1982)                   12

*Stonehart v. Rosenthal,*
2001 U.S. Dist. LEXIS 11566, No. 01 Civ. 651,
2001 WL 910771 (SDNY 2001)                                            17

*Thomas v. Boscia,* 2009 WL 2778105 (S.D. Ind. 2009)                    8

*Turner v. J.V.D.B. & Assocs., Inc.,*
330 F.3d 991 (7th Cir. 2003)                                          10

*Turner v. J.V.D.B. & Assocs., Inc.,*
318 F. Supp. 2d 681 (N.D. Ill. 2004)                                  11

*Wilton Estates v. Quinn,*
N.Y.L.J. (Civ. Ct. N.Y. Co., 2008), *affd.,*
2009 NY Slip Op 52351(U), N.Y.L.J. 11/25/09,
p. 34, col. 1 (App. Term, 1st Dept.)                                   21

**INTRODUCTION**

This memorandum is respectfully offered in opposition to the defendants'

motion for an order, pursuant to FRCP 56, granting summary judgment

dismissing the complaint.  That relief must be denied, in its entirety, because it is

readily apparent that the defendants violated various provisions of the Fair Debt

Collection Practices Act ("FDCPA"), as a matter of law.  The defendants did so

first by issuing a statutory rent demand seeking of rent undisputedly not owed by

the plaintiff and then by commencing a summary eviction proceeding based upon

the same erroneous rent demand.  Next, the defendants violated the FDCPA by

failing to properly verify the debt it claimed the plaintiff owed in response to his

written dispute.

The defendants' motion is essentially based on two legal claims, both of

which are fundamentally erroneous; that the FDCPA requires that violations be

knowing and intentional to be actionable and that they are entitled to the benefit

of the Act's ***bona fide*** error defense. Both claims are factually and legally

baseless because the FDCPA is in fact a strict liability statute and, with few

exceptions, an intentional or knowing violation need not be shown and, the

defendants cannot avail themselves of the ***bona fide*** error defense because they

concededly have no policies designed to avoid the errors made here and they

unreasonably relied on facially ambiguous and contradictory information from

their client without making any effort to understand it.

1

Finally, the defendants violated 15 USC §1692g(b) by failing and refusing to immediately seek to discontinue the eviction proceeding, with prejudice, and thereby cease collection efforts, once their error became apparent.

On May 16, 2013 the plaintiff submitted a motion for partial summary judgment on liability.  Rather than duplicate the arguments set forth there, the Court is respectfully referred to the plaintiff's memorandum of law submitted in support of that motion as it addresses many of the legal and factual issues set forth here.

The plaintiff's summary judgment memorandum, together with this memorandum, and the exhibits submitted with the motion, fully establish not only that the defendants are not entitled to summary judgment but that the plaintiff is, as a matter of law.

## ARGUMENT

I.   **The FDCPA is a Strict Liability Statute and the Defendants Have Not Established, and Cannot Establish, a *Bona Fide* Error Defense**

The following facts are not disputed:

- Defendant Kucker & Bruh, LLP ("K&B") is a high volume landlord law firm that admittedly commences "several dozen" non-payment eviction proceedings every month.  In such proceedings it is a statutory prerequisite that a rent demand be issued before commencement of the proceeding. (Declaration of Alan D. Kucker ["Kucker Decl."] ¶ 2);

- K&B's senior partner, defendant Alan Kucker ("Kucker"), regularly signs numerous rent demands at a time.  The rent demand issued to the plaintiff was one in a stack of 19 signed by Kucker at that time.  (Plaintiff's Ex. H, p. 56, as corrected);

2

- K&B charges its clients $50 to prepare and issue a rent demand. (Plaintiff's Exhibit H, p. 53)  K&B charges its clients $75 to prepare and file a summary nonpayment eviction proceeding in the New York City Housing Court.  (*Id.*);

- At the time the rent demand in this case was signed, Mall Properties Inc., ("MPI") the management company for the plaintiff's landlord, was a new client of K&B having started sending non-payment of rent claims only six to eight weeks earlier. (Kucker Decl. ¶ 6)

- MPI manages approximately 1,100 rental units throughout New York City. (Plaintiff's Ex. D, p. 8)

- Kucker signed the rent demand on March 15, 2012 on the basis of a single computer-generated printout K&B received from MPI dated, March 14, 2012, which stated that the plaintiff owed $1,125.23 consisting of March rent in the amount of $790.30 and fuel charges from August through March at $38.07 per month.  The defendants describe this as a "Delinquency Report."  The report contained no information about the plaintiff's age, rental history, rental status, or the fact that plaintiff had a Senior Citizen Rent Increase Exemption ("SCRIE"). (Kucker Decl. ¶ 7; Plaintiff's Exhibit M);

- That report indicated, on its face, that a recent payment had been credited to the plaintiff's rent account, on March 6, 2012, in the amount of $400.72, which is precisely the amount of the plaintiff's monthly rent obligation after application of his SCRIE.  Despite that obvious red flag, Kucker assumed, erroneously, and without basis, (if he noticed it at all) that the payment must have been applied to some unspecified earlier arrears.  Neither Kucker, nor anyone else at K&B, made any attempt to contact MPI to determine how the March 6, 2012 had been applied.  Kucker testified, "It did not occur to me to ask the client [about the payment] nor did I believe it was my responsibility to do so," Kucker stated. (Kucker Decl. ¶ 8; Plaintiff's Exhibit H, p. 59-61);

- At the time he signed the rent demand Kucker believed that FDCPA's requirement of "the maintenance of procedures reasonably adapted to avoid any such error" required nothing more than maintaining his attorney registration status.[1] (Plaintiff's Ex. H, p. 94-97);

---

[1] Ignorance of the law cannot, and does not, support a **bona fide** error defense.  **Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,** 559 U.S. 573 (2010).

- K&B admittedly has no formal or even informal policies or procedures in place to avoid the type of error that occurred here. (Plaintiff's Ex. H, p. 9 and Ex. 1 thereto);

- In response to the plaintiff's demand for documentation of the defendants' written procedures to avoid errors in collecting debts they responded that "no responsive documents exist."  (*Id.*);

- K&B never hired, or even consulted with, FDCPA compliance counsel. Nor did any lawyer at the defendant law firm ever take a Continuing Legal Education course on the FDCPA and nobody in the firm was required to do so. (Plaintiff's Ex. H, p. 83)

- K&B takes no steps whatsoever to verify the accuracy of the information its clients provide.  It is K&B's position that to do so would be infeasible. (Kucker Decl. ¶ 9)

- After issuance of the rent demand, but before the commencement of the summary eviction proceeding, K&B received a second red flag, a computer generated report from MPI (styled a "MPI Legal Detail Report") dated March 23, 2012 which stated, without explanation, that the plaintiff now owed $1525.95, a $400.72 increase from the March 14, 2012 Delinquency Report.  That difference is precisely the amount of the plaintiff's monthly rent obligation and precisely the amount the March 14, 2012 report acknowledged had been paid on March 6, 2012. (Kucker Decl. ¶ 11; Exhibit 7 to plaintiff's Exhibit H);

- Despite receiving two dramatically different reports from MPI, dated just nine days apart, the defendants made no attempt to determine the basis for the discrepancy.  Instead, the defendants blithely filed an eviction proceeding against the plaintiff, without any concern that its client was issuing inconsistent reports containing amounts hundreds of dollars apart;

- Finally, and perhaps most incredibly, when asked about his, and his firm's procedures to avoid errors, Kucker testified as follows:

    Q.  And are you familiar with the bona fide error provision of the FDCPA?

    A.  Yes.

    Q. And what is your understanding as to what the bona fide error provision provides?

A.  Pretty much -- I pretty much stated it in the fourth affirmative defense.

Q.  So is it your testimony that if there was a violation that you didn't do it intentionally?

A.  It's certainly my testimony that we didn't do it intentionally.

Q.  And is it also your testimony that your firm, you and/or your firm had reasonable procedures that had been adopted to avoid the error?

A.  Yes. It's called my law license.

Q.  What other reasonable procedures, if any, were adopted to avoid the error, if any?

A.  I believe -- I believe that as an attorney, since I am ethically mandated to understand the law, that my law license is -- and my good standing in the bar is a reasonable -- are reasonable procedures to undertake to -- to -- are reasonable procedures under the statute.

Q.  What reasonable procedures were adopted by your firm to avoid the error?

A.  Well, to the extent that -- as the law firm is responsible for all its paralegals and its process servers, everything is under the auspices of the firm, the attorney and its licenses and the good standing at the bar around the knowledge required to practice and to -- I assume your question -- and stop me if you don't want me to, but I believe in this circumstance the difference between debt collectors who are not attorneys and debt collectors who are attorneys, because certainly whether I have a manual or I go listen to somebody lecture, it doesn't provide any greater obligation for my firm to have procedures to avoid errors in the litigation than my requirement that as attorneys we follow the law and don't violate it in the process.

Q.  So what specific procedures did you and your firm adopt to avoid violating the Fair Debt Collection Practices Act?

A.  I believe I answered the question.  The procedures are

Q.  I'm asking you now specifically

5

A.  The same procedures that any attorney has in his office to remain in good standing as an attorney admitted to practice law in the state and federal courts.

 Q.  I understand you're talking about the general practice of law. But I'm not talking about the general practice of law.

A.  There are no –

Q.  Excuse me. Let me finish. I'm asking you about the avoidance of violations of the Fair Debt Collection Practices Act?

A.  I don't believe New York recognizes any specialties in the practice of law, besides, perhaps, patents. So the idea that I have to become a specialist in any area of law my firm does to be able to rely on the bona fide error defense I believe is incorrect as a legal statement.

Q.  I'm sorry. I didn't ask you about specialties. I only asked you about avoiding violation of FDCPA.

A.  I answered the question at this point. (Plaintiff's Exhibit H, pp. 94-97)

To establish a violation of the FDCPA, a consumer does not need to show (with a few exceptions not relevant here)[2] intentional conduct on the part of the debt collector. The Act "is a strict liability statute, and the degree of a defendant's culpability may **only** be considered in computing damages." ***Ellis v. Solomon and Solomon,*** 591 F.3d 130, 2010 U.S. App. LEXIS 752 (2d Cir 2010), citing ***Bentley v. Great Lakes Collection Bureau, Inc.,*** 6 F.3d 60, 63 (2d Cir. 1993) (emphasis added); See also, ***Foti v. NCO Fin. Sys.,*** 424 F. Supp. 2d 643, 661 (SDNY 2006), citing ***Castro v. ARS Nat'l Servs., Inc.,*** 2000 U.S. Dist. LEXIS 2618, No. 99 Civ. 4596, 2000 WL 264310, at *2 (SDNY 2000).  ("The

---

[2] See plaintiff's summary judgment memo of law, ftn. 10.

FDCPA establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages.")

The FDCPA exempts a debt collector from liability where it "shows by a preponderance of evidence that the violation was not intentional and resulted from a **bona fide** error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  As it is an affirmative defense, "[t]o recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector." **Hess v. Cohen & Slamowitz LLP,** 637 F.3d 117, 125 2011 U.S. App. LEXIS 3512 (2d Cir 2011), citing **Ellis,** 591 F.3d at 135.

An attorney cannot simply rely upon its client in deciding whether to send a debt collection letter and not violate Section 1692e(3) without some other indicia of reasonableness; for example, familiarity with the other party's past reliability or current practices.  It is insufficient to claim that its client's procedures were adequate, as K&B seeks to do here, particularly since it had no way of knowing whether in fact it's client's procedures are accurate and reasonable.[3]  **Miller v. Wolpoff & Abramson, LLP,** 471 F. Supp. 2d 243, 251 (E.D.N.Y. 2007) (emphasis added) (relying on **Miller v. Wolpoff & Abramson, LLP,** 321 F.3d 292, 304-05 (2d Cir. 2003).   Nor can reliance upon a single person be

---

[3] This is particularly true here because the defendants admittedly began pursuing alleged non-payment of rent claims on MPI's behalf, at most, just eight weeks before issuing a rent demand to the plaintiff.  (Kucker Decl. ¶ 6)  Accordingly, the defendants cannot claim that MPI had a sufficiently reliable track record of supplying accurate rent arrearage information.

considered sufficient to establish the defense.  "Whatever minimum procedures are reasonable under the circumstances, surely more is required than reliance on a single person, no matter how well-trained and knowledgeable." ***Gathuru v. Credit Control Servs.,*** 623 F. Supp. 2d 113, 123 (D. Mass. 2009) (citing ***Mirabal v. General Motors Acceptance Corp.,*** 537 F.2d 871 (7th Cir. 1976); ***Isham v. Gurstel, Staloch & Chargo, P.A.,*** 2010 U.S. Dist. LEXIS 102407, 36 (D. Ariz. July 7, 2010) (reliance on the competence of a single person to properly intake and code the file is not sufficient); ***McCollough v. Johnson, Rodenberg & Lauinger,*** 610 F. Supp. 2d 1247, 1260 (D. Mont. 2009) *aff'd*, 637 F.3d 939; 2011 U.S. App. LEXIS 4072 (9th Cir. 2011) (***bona fide*** error defense denied where defendant had had no process for verifying that the information was accurate; defendant's "proofreading could not address or prevent this FDCPA violation"); ***Thomas v. Boscia,*** 2009 WL 2778105 (S.D. Ind. 2009) (The only preventive procedures relied on information provided by the clients, and thus the procedures were inadequate as a matter of law, since they were incapable of cross-checking).

    To qualify for the ***bona fide*** error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors.  ***Reichert v. Nat'l Credit Sys.,*** 531 F.3d 1002, 1007 (9th Cir. 2008).  The defendants' admitted policy and procedure of blindly relying upon the documentation submitted by its client makes it evident that "(T)he omissions and misstatements were part of defendants' usual credit practice and did not occur in

spite of procedures designed to avoid unintentional violations of the
Act." *Palmer v. Wilson,* 502 F.2d 860, 861 (9th Cir. 1974).

A *bona fide* error defense has been upheld only in those instances where
a debt collector, unlike K&B, has policies and procedures designed to avoid
error.  In *Katz v. Asset Acceptance, LLC,* 2006 U.S. Dist. LEXIS 86634 (EDNY
2006), the court upheld a *bona fide* error defense where, regarding venue alone,
the firm "(1) publishes and circulates policies and procedures to paralegals and
attorneys stating that suits are to be filed in the venue of residence … (2)
provides FDCPA compliance training, which includes specific instructions on the
proper filing of collection suits in light of the FDCPA's venue requirements … and
(3) requires attorneys and paralegals to review flow charts explaining proper
venue procedures".

See also, *Acheampongtieku v. Allied Interstate, Inc.,* 2005 U.S. Dist.
LEXIS 17901 (SDNY 2005) ("[t]he parties do not dispute that Allied maintained
specific procedures to prevent errors . . ."); *Reichert,* supra, citing *Jenkins v.
Heintz,* 124 F.3d 824, 834-35 (7th Cir. 1997) (acceptable procedures "included a
requirement that the creditor verify under oath that each charge was accurate, as
well as 'the publication of an in-house fair debt compliance manual, updated
regularly and supplied to each firm employee; training seminars for firm
employees collecting consumer debts; and an eight-step, highly detailed pre-
litigation review process to ensure accuracy and to review the work of firm
employees to avoid violating the Act").

***McCollough, supra***, is particularly illustrative here.  In that case the Ninth Circuit affirmed the District Court's order granting summary judgment to the plaintiff rejecting the defendant law firm's ***bona fide*** error defense, as a matter of law.  The defendant in ***McCollough*** had commenced a collection suit against the plaintiff even though it had conflicting information ***in its own file*** indicating that the claim was barred by the statute of limitations.  The court stated:

> The district court correctly concluded that JRL's bona fide error defense failed as a matter of law. JRL argues that it maintained adequate preventive procedures by utilizing a system to flag potential statute of limitations problems. However, the procedures that support a valid bona fide error defense must be "'reasonably adapted' to avoid the specific error at issue." ***Reichert***, 531 F.3d at 1006 (quoting ***Johnson v. Riddle***, 443 F.3d 723, 729 (10th Cir. 2006)). JRL's error in this case was not its failure to catch time-barred cases; indeed, JRL initially spotted the limitations period problem and sent a letter to CACV requesting "an instrument in writing to extend" the limitations period. Instead, ***JRL erred by relying without verification on CACV's representation and by overlooking contrary information in its electronic file.***  JRL thus presented no evidence of procedures designed to avoid the specific errors that led to its filing and maintenance of a time-barred collection suit against McCollough. *Cf.* ***Jenkins v. Heintz***, 124 F.3d 824, 834 (7th Cir. 1997) (debt collectors maintained "extensive systems" and "elaborate procedures . . . to avoid collecting unauthorized charges," and "insist[ed] that their client[s] verify under oath that each of the charges was true and correct").
>
> JRL contends that its reliance on CACV's representation about a June 30, 2004, partial payment created a question of fact for the jury on its bona fide error defense. However, the bona fide error defense "does not protect a debt collector whose reliance on a creditor's representation is unreasonable." ***Reichert***, 531 F. 3d at 1006 (citing ***Clark v. Capital Credit & Collection Servs., Inc.***, 460 F.3d 1162, 1177 (9th Cir. 2006)). ***Unwarranted reliance on a client is not a procedure to avoid error.*** Indeed, in ***Reichert***, we held that "[t]he fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes."  531 F.3d at 1007; *see also* ***Turner v. J.V.D.B. & Assocs., Inc.***, 330 F.3d 991, 996

(7th Cir. 2003) (suggesting that one "reasonable preventive measure[ ]" to avoid mistakes is "an agreement with . . . creditor-clients that debts are current"); ***Turner v. J.V.D.B. & Assocs., Inc.,*** 318 F. Supp. 2d 681, 686 (N.D. Ill. 2004) (on remand from the Seventh Circuit in the above cited case, determining that an "understanding and/or agreement" that the client would only furnish reliable information would have been necessary to showing reasonable reliance). (emphasis added)

K&B argues, in all apparent seriousness, that its "standards" are sufficient because requiring a higher standards would be too laborious.   Kucker argues that, "As a practical matter, there is no way for K&B to ascertain the accuracy of such overdue rent reports short of auditing the clients, which is neither physically nor economically feasible." (Kucker Decl. ¶ 9)  Kucker's claim, that it cannot possibly be expected to verify its client's rent claims because K&B issues so many debt collection demands is both disingenuous and absurd and must be rejected out of hand.

K&B similarly argues that it should be entitled to a ***bona fide*** error defense, despite having no procedures whatsoever to avoid error, because according to K&B, landlords necessarily create and maintain accurate records:

> As [the reports relied upon by K&B] are generated from the contemporaneously maintained accounting records of building owners and their agents who are engaged in the business of managing the subject residential rental properties in a very heavily regulated industry – and who thus have a strong vested interest in maintaining accurate records – the accuracy of such reports, and the exercise of due diligence in their preparation, is of necessity assumed. (Kucker Decl. ¶ 9)[4]

---

[4] The defendants of course do not mention that MPI admittedly asserted bogus rent claims against the plaintiff on at least three separate occasions over a two year period; a record that hardly conveys a high level of confidence.

Kucker makes no effort to provide any factual basis for his outrageously unsupported statement.  In reality, an enormous and longstanding problem exists in New York City where landlords frequently issue baseless rent demands and frequently commence baseless eviction proceedings, based upon inaccurate records, for rent those tenants do not owe.  Or, even more troubling, such proceedings are often commenced where it is known that no rent is in fact due, in an effort to harass them from their rent regulated apartments. See plaintiff's memo in support of summary judgment, Point V.

Rent regulated tenants paying below market rate rents have long been targeted by unscrupulous landlords eager to obtain a vacancy in order to raise the rent and even remove the apartment from rent regulation altogether. Examples of landlords overreaching in this regard are legion.  See, plaintiff's memo, p.22-23; **State v. 820 Associates,** 116 Misc. 2d 901, 456 N.Y.S.2d 604, 1982 N.Y. Misc. LEXIS 3975  (Sup. Ct. N.Y. Co. 1982) (Landlord brought repeated nonpayment proceedings which were either dismissed or withdrawn on proof submitted by the tenant that the rents had been paid as part of a scheme to fraudulently convert the building to cooperative ownership.)

There is little, if any, incentive for landlords to refrain from commencing frivolous nonpayment proceedings; K&B charges only $50 to prepare and issue a Rent Demand and another $75 to commence a proceeding.  The court filing fee for such cases is only $45.  Thus, for a minimum investment of $170 a landlord can commence a summary non-payment proceeding, and possibly obtain

possession of a valuable rent regulated apartment, regardless of whether the

rent is actually owed.[5]

In 2008 the New York City Council specifically enacted legislation to

punish landlords who commence baseless nonpayment proceedings, as a

means of harassing rent-regulated tenants, because it was so common. NYC

Administrative Code §§ 27-2004(a)(48), 27-2005(d), 27-2115(h) *et seq.* (NYC

Local Law 7, 2008) The frivolous proceedings often have the intentional or

unintentional effect of harassing rent-regulated tenants as a means to induce

them to vacate their homes, enabling landlords to raise rents.[6]

---

[5] The defendants' effort to show that Housing Court procedures protect tenants from baseless rent claims is specious.  See defendants' memo, pp. 18-19.  In 2012, 217,914 residential nonpayment of rent eviction cases were filed in the New York City Housing Court, to be heard by the Court's 50 judges. (New York State Office of Court Administration records, cited by Housing Court Answers, http://cwtfhc.org/wp-content/uploads/2013/04/Case_Filings_2012.pdf) In 2012 37,865 default judgments were issued against residential tenants in the New York City Housing Court, subjecting them to potential immediate eviction. *Id.*  It is well established that 99% of tenants who appear in New York City Housing Court eviction cases are unrepresented by counsel while the overwhelming majority of landlords are represented by counsel in those cases. THE TASK FORCE TO EXPAND ACCESS TO CIVIL LEGAL SERVICES IN NEW YORK, November 2010 Report. (http://www.nycourts.gov/ip/access-civil-legal-services/PDF/CLS-TaskForceREPORT.pdf)   While the plaintiff was fortunate to be able to secure competent counsel who was able to obtain a dismissal of the proceeding, the same can hardly be said of the overwhelming majority of low income tenants sued in New York City.

[6] The defendants also claim, in all apparent seriousness, that "the procedural requirements of the litigation process pursuant to the New York State Real Property Actions and Proceedings Law (RPAPL) with respect to the L&T Proceeding…satisfy such requirements.  The defendants do not cite a single provision of the RPAPL to support their absurd claim.  And, the only case cited by the defendants, *Derisme v. Hunt Leibert Jacobson, PC,* 880 F. Supp 339 (D. Conn., 2012) has nothing to do with either the RPAPL or New York City landlord tenant summary proceedings but instead involved a Connecticut foreclosure action.

Summary non-payment eviction proceedings actually involve very few procedural safeguards, particularly where the tenant defaults.  In that instance the landlord is permitted to apply for a possessory judgment and evict the tenant without a judge ever weighing in on the evidence of non-payment.  Indeed, such applications are routinely submitted to the clerk's office and

As such, K&B's reliance upon MPI's recordkeeping is insufficient both as a matter of law, as a matter of public policy and as a matter of common sense.

It is plain that K&B has no procedures whatsoever to prevent errors and that K&B openly relies upon the word of its clients and nothing else, even though the threatened consequence is the forfeiture of people's homes.  No reasonable jury could find that K&B had taken "reasonable precautions" to avoid such error. The defendants have not established, and indeed cannot establish, a ***bona fide*** error defense and its efforts to claim otherwise must be rejected, as a matter of law.  This is particularly true where the risk of error, and the dramatically higher risk of harm to tenants, in Housing Court eviction filings is so much greater than in virtually all other types of debt collection activity.  As set forth in the plaintiff's summary judgment memorandum of law (Pt. V) landlord lawyers, like the defendant, who routinely file mass numbers of non payment of rent eviction proceedings based upon the flimsiest of information must be held liable when they erroneously file cases against tenants who do not owe rent.  The risk of not doing so is the eviction of residential tenants who do not owe the rent claimed.

## II.   The Complaint States Claims that the Defendants violated FDCPA Sections 1692d, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f

The defendants' assertion that the complaint fails to state claims they violated FDCPA Sections 1692d, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f demonstrates their fundamental, and continued, ignorance of the Act and its

---

routinely "rubber-stamped" without any testimony required from the landlord to establish the default in paying rent.

requirements.[7]  In doing so, the defendants assert, erroneously, that "the sole

material allegations of fact in the Complaint—that the K&B Demand and K&B

Verification were erroneous—only state a claim … at most pursuant to two (2) of

the seven (7) cited statutory sections…"  The defendants are, once again,

incorrect.

The complaint is not limited to the defendants' conduct in issuing an

erroneous rent demand.  Instead, the complaint expressly alleges that the

issuance of the rent demand *as well as the petition filed in the Housing Court*

violate the FDCPA.  The complaint states:

> 42.    By issuing the demand *and the petition in the summary proceeding* demanding payment of rent that was not in fact due and owing and by failing and refusing to provide an accurate verification of the landlord's claim in response to the plaintiff's demand, the defendants acted in a false, deceptive, misleading and unfair manner, the natural consequence of which was to harass, oppress, or abuse the plaintiff in connection with the collection of a debt.

> 43.    By issuing the demand *and the petition in the summary proceeding* demanding payment of rent that was not in fact due and owing, defendants acted in a false, deceptive, misleading and unfair manner by falsely representing the amount, character or legal status of the debt.

> 44.    By issuing the demand *and the petition in the summary proceeding* demanding payment of rent that was not in fact due and owing, the defendants acted in a false, deceptive, misleading and unfair manner by taking an action that could not legally be taken for the purpose of coercing the plaintiff to pay an alleged debt that was not in fact due and owing.

---

[7] As set forth in the plaintiff's summary judgment memorandum, the claim that the defendants violated § 1692e(4) is withdrawn.

45.    By issuing the demand ***and the petition in the summary proceeding*** demanding payment of rent that was not in fact due and owing, the defendants acted in a false, deceptive, misleading and unfair manner when they used false representations and deceptive means to collect or attempt to collect a debt. (complaint, Plaintiff's Exhibit A) (emphasis added)

Nor have the defendants accurately described the FDCPA provisions at issue. For example, in challenging a violation of  § 1692d, (which prohibits "conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt") they claim that they did not engage in any of the "illustrative examples of such conduct."  In doing so the defendants conveniently omitted key predicate language of the Act:  ***"Without limiting the general application of the foregoing, the following conduct is a violation of this section"*** (emphasis added) which makes clear that Congress did not intend to limit claims to the "illustrative examples."

Next, § 1692e(5), which bars the "threat to take any action that cannot legally be taken…" clearly bars the threat to sue a tenant for the SCRIE share of his rent in a rent demand where it is illegal under state law to do so.  (See plaintiff's summary judgment memorandum, ftn. 1)

The defendants undeniably violated § 1692e(10), which prohibits the use of false representations or deceptive means to collect a debt, by alleging, falsely, both in the rent demand and in the petition that the plaintiff owed any money to his landlord.

Finally, the defendants violated § 1692f, which bars a debt collector from using unfair or unconscionable means to collect a debt, including "the collection of any amount" not "permitted by law", as it is illegal to sue a tenant for the SCRIE share of his rent.  (See plaintiff's memo of law, ftn. 1)

### III.   The Defendants' Attempt to Create a Requirement of a Knowing and Intentional Violation of the FDCPA where None Exists is Legally Baseless

None of the cases cited by the defendants in support of their argument are apposite.  Nor is it even remotely accurate for the defendants to claim that the "weight of the relevant authorities…have determined that (the FDCPA) imposes liability upon debt collectors only for their knowingly and intentionally false…statement of the amount of the debt claimed."  (Defendant's memo, p. 9) In this regard, the defendants rely heavily on *Stonehart v. Rosenthal,* 2001 U.S. Dist. LEXIS 11566, No. 01 Civ. 651, 2001 WL 910771 (SDNY 2001).  That reliance is wholly misplaced. As discussed in the plaintiff's memorandum in support of its motion for summary judgment, (ftn. 11) the FDCPA holding in *Stonehart* was expressly rejected by this Court in *Goldman v. Cohen,* 2004 U.S. Dist. LEXIS 25517 (SDNY 2004) and subsequently affirmed by the Second Circuit, 445 F.3d 152 (2nd Cir. 2006).  Judge McKenna expressly stated in his District Court decision in *Goldman* that the FDCPA is a strict liability statute and added, at footnote 11 of his decision,

> Cohen cites cases that allocate the burden of proof differently.  See *Stonehart v. Rosenthal,* No. 01 Civ. 651, 2001 U.S. Dist. LEXIS 11566, (S.D.N.Y. Aug. 13, 2001) (citing *Ducrest v. Alco*

***Collections, Inc.,*** 931 F. Supp. 459 (M.D. La. 1996)) in holding that "to state a claim under section 1692e(2) of the FDCPA, [plaintiff] must show that [defendant] knowingly misrepresented the amount of the debt when he verified the complaint"). However, ***this Court finds those holdings contrary to the plain language of § 1692k(c), and is bound to follow the law as stated by the Second Circuit***.  (emphasis added)

***Stonehart***'s FDCPA holding was also expressly rejected by the Ninth Circuit in ***Clark v. Capital Credit & Collection Services, Inc.,*** 460 F.3d 1162 (9th Cir. 2006) ("allowing a debt collector to escape liability for unintentional violations would render the ***bona fide*** error defense superfluous").  460 F.3d at 1176.  While ***McStay v. I.C. System, Inc.,*** 174 F.Supp. 2d 42 (S.D.N.Y. 2001) followed ***Stonehart,*** and ***Bleich v. The Revenue Maximization Group, Inc.,*** 233 F.Supp. 2d 496 (E.D.N.Y. 2002) followed ***McStay,*** both of those cases were decided before ***Stonehart*** was rejected in ***Goldman.*** Thus, those cases are inapposite.

Moreover, unlike the plaintiffs in ***McStay*** and ***Bleich,*** the plaintiff in this case is not merely alleging that the debt was not owed at the time the defendants issued the collection notices.  To the contrary, the defendants herein recklessly ignored clear red flags in the documentation it relied on which should have put them on notice that the debt was dubious, at best.

Moreover, this court has distinguished between the collection of a debt which is merely disputed as part of litigation and efforts to collect debt that is undeniably invalid.  In ***Hawkins-El III v. First American Funding, LLC,*** 891 F.Supp. 2d 402 (E.D.N.Y. 2012), the court cited ***Johnson v. Capital Mgmt.***

18

*Servs.,* 2011 U.S. Dist. LEXIS 138023, 2011 WL 6012509, at *6 (W.D.N.Y. 2011)

for the proposition that "Plaintiff merely seeks to air his dissatisfaction with . . .

efforts at collecting an allegedly invalid debt, which is not actionable in this

proceeding."  In denying the plaintiff's allegations that the defendant had

"misrepresented the character, amount and legal status of his debt", the court

noted that plaintiff "has not put forward any evidence that he is not the same

James S. Hawkins-El III that signed the loan mortgage documents or that he

otherwise completely paid off the loan."  The plain implication is that such

evidence would support a holding that the defendant had so misrepresented the

debt.

The defendants argue that their proposed intent theory is "not inconsistent

with" the seminal cases ***Bentley v. Great Lakes Collection Bureau, Inc.,*** supra,

***Clomon v. Jackson,*** 988 F. 2d 1314 (2d Cir. 1993), and ***Russell v. Equifax***

***A.R.S.,*** 74 F.3d 30 (2d Cir. 1996).   The defendants are incorrect.  In reality,

those cases fully confirm that the FDCPA is a strict liability statute. Neither

***Bentley*** nor ***Clomon*** discussed the issue of intent because ***intent is irrelevant***

to the inquiry whether the FDCPA was violated.  Moreover, defendants cite

***Russell*** for the proposition that "once it is shown that defendant . . . failed to fulfill

the requirements of the Act, strict liability is imposed," arguing that the clear,

general pronouncement – that strict liability must be imposed – is only applicable

to the specific facts set forth in that case (wherein the defendant had issued a

notice that was deceptive because it was ambiguous).  However, ***Russell*** does

not delineate that strict liability will only apply if certain provisions of the Act are violated as opposed to others.  Thus, *Russell* directly refutes the defendants' theory.

Finally, *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1992 U.S. App. LEXIS 410 (6th Cir. 1992), the only Circuit Court case relied on by the defendants, not only does not support their theory but further confirms that they cannot use the FDCPA's *bona fide* error defense.

*Smith* involved a $10.00 discrepancy between what was actually owed and what was alleged to be owed.  There was nothing in the creditor's referral to the debt collector that would indicate any problems with the claim.  In granting the defendant summary judgment dismissing the action based upon its establishment of a bona fide error, the court closely examined its procedures and found them to reasonable.

> Transworld supported its position with two employee affidavits (which explained why Transworld *inadvertently* mailed its second collection letter shortly after receiving Smith's cease and desist letter) and *a five-page instruction manual* Transworld provides each client which describes Transworld's collection procedures. . . .

> The (defendant's)  documents clearly reflect the fact that it was a clerical error on the part of defendant's client to refer plaintiff's account for collection, both as to the amount alleged as well as the fact that the debt had previously been paid. *The defendant's referral form, completed and signed by Ryder, includes specific instructions to claim only amounts legally due and owing.* Plaintiff has brought forth no facts to challenge the Ortiz affidavit which supports defendant's claim that it is entitled to the bona fide error defense.

> Because the appellee employs procedures reasonably adapted to prevent errors in amounts referred for collection, Transworld reasonably relied on

the accuracy of Ryder's $ 456.21 debt figure; the resulting mistake was bona fide error pursuant to 15 U.S.C. § 1692k(c). We therefore reject Smith's sixth assignment of error.  (emphasis added)

In dramatic contrast to **Smith**, the defendants here cannot point to **any** facts to support their purported bona **fide error** defense.  They have no procedures, formal or informal, to avoid this type of error.  The defendants only started pursuing claims for MPI a mere six weeks before the rent demand was issued to the plaintiff; hardly time to determine with any degree of certainty that MPI's records were reliable.  The documents relied upon by the defendants were replete with red flags which should have alerted them to the error.  **Smith** provides no support whatsoever to the defendants and instead supports the plaintiff.

**IV.   K&B Violated FDCPA § 1692g By Failing to Provide Verification of the Alleged Debt and then by Refusing to Discontinue Litigation With Prejudice And Upon Payment of Reasonable Attorney's Fees**

A proceeding in Housing Court may not be unilaterally discontinued once issue has been joined.  NY CPLR § 3217(a).  A petitioner seeking to discontinue the proceeding must make a written motion seeking leave of court to do so, which may be granted "upon such terms and conditions as may be just." NY CPLR § 3217(b).  **Wilton Estates v. Quinn,** N.Y.L.J. (Civ. Ct. N.Y. Co., 2008), **aff'd**. 2009 NY Slip Op 52351(U), N.Y.L.J. 11/25/09, p. 34, col. 1 (App. Term, 1st Dept.)  Housing Court judges routinely condition such a discontinuance upon an award of attorney's fees to the opposing party. **Wilton,** supra., **407 East 81**

*Realty LLC v. Creighton*, N.Y.L.J., Oct. 13, 2010 (Civ. Ct. N.Y. Co.); *Liant Record LLC v. Karabell*, N.Y.L.J.  12/31/09, p. 26, col.1, (Civ. Ct. N.Y. Co.); *Miller v. Gaess*, N.Y.L.J., 10/23/09 p. 25, col. 1 (Civ. Ct. N.Y. Co.).

Thus, upon discovering that the rent demand was issued in error, it was incumbent upon the defendant to *immediately* seek to discontinue the proceeding, either by stipulation or by serving a formal motion pursuant to CPLR 3217b. The defendant did neither.  Although defendant eventually offered to discontinue the litigation, the offer was defective for two reasons.  First, contrary to Mr. Kucker's declaration (¶ 17), the defendant only offered to discontinue the proceeding *without prejudice* to MPI's ability to commence another suit for the same bogus arrears.  Given that the rent demand at issue was the third such defective demand for monies not actually owing, and that the proceeding was concededly baseless, it is clear that the defendants should have agreed to discontinue the proceeding *with prejudice* in order to meaningfully comply with the FDCPA.)  Second, given the routine award of reasonable attorney's fees as a condition of discontinuance, if the defendant were serious about ceasing collection activities, it would have made a real attorney's fees offer rather than the token $500.00 it was prepared to pay. (Kucker Decl. ¶ 18)[8] Any experienced Housing Court practitioner could reasonably expect a judge to award significantly

---

[8] In this regard, the defendants have inexplicably failed to provide the declarations of either Gregg Kurlander or Ivan Okun, the K&B attorneys who actually appeared in Housing Court on behalf of MPI on April 13 and May 17, 2012.  Kucker did not appear on either occasion and accordingly as no personal knowledge of what occurred.  In contrast, the plaintiff has offered the declaration of James B. Fishman who appeared in the Housing Court on both dates and thus has personal knowledge of what occurred.  (See Fishman Declaration, June 6, 2013)

more, and indeed, the court ultimately awarded three times that amount.

(Fishman Decl. ¶ 7)

As set forth in the within Fishman Declaration, at no time did the

defendants ever offer to discontinue the eviction proceeding with prejudice.  And

no offer to discontinue the proceeding at all was made until May 7, over 5 week

after it as commenced and over a month after the defendants undeniably knew

their claims were baseless.  That conduct constitutes a violation of  § 1692g(b)

which requires a debt collector to cease all further debt collection activity until it

provides verification of the alleged claim.

Of course the defendants never provided verification of the alleged claim.

Instead, on April 6, 2012 the defendants produced the same erroneous, and

facially ambiguous, report it wrongly relied on in issuing the rent demand.

(Defendant's Exhibit N)  It is not contested that upon receipt of the plaintiff's April

4 dispute letter the defendants made no effort to contact their client to advise

them that the claim was disputed or to confirm, in person, the validity of the

claim.  Instead, the defendants merely parroted the erroneous information

previously received, despite being on notice that the claim was disputed.

It cannot be said that the defendants' conduct following receipt of the

plaintiff's dispute was either reasonable or in compliance with § 1692g(b).  It

serves no purpose whatsoever for a debt collector to merely recycle the same

facially defective report.  Instead, the defendants easily could have, and should

have, contacted their client.  Had they done, so it cannot seriously be disputed

they would have learned that the plaintiff owed nothing which should then have caused them to immediately take steps to discontinue the proceeding.  Indeed the entire purpose of the dispute mechanism of 1681g is to quickly put an end to collection efforts where it is shown the debt is not in fact owed.  *Jacobson v. Healthcare Financial Services, Inc.* 516 F.3d 85, *; 2008 U.S. App. LEXIS 3144, (2nd Cir. 2008) ( "As a response to the recurring problem of debt collectors dunning the wrong person *or attempting to collect debts which the consumer has already paid*, the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., gives the consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. 15 U.S.C.S. § 1692g(b).")  This is precisely what occurred here and precisely why the plaintiff exercised his right under the Act to dispute the debt.  The defendants woefully failed in their obligation to provide accurate verification of the debt and instead simply repeated their original, erroneous, claim.

The plaintiff's claim for relief under § 1692g is entirely proper and must be upheld.

## CONCLUSION

Based upon the foregoing, together with the documents submitted herewith as well as the plaintiff's memorandum of law in support of his motion for partial summary judgment, it is respectfully submitted that the plaintiff is entitled to an order, denying the defendants' motion in its entirety and, pursuant to FRCP 56, granting partial summary judgment in his favor on liability and severing his

damage claims for trial. The plaintiffs have fully established, as a matter of law, that the defendants violated the Fair Debt Collection Practices Act and that violation cannot be excused as a ***bona fide*** error.

Dated:      New York, NY
            June 6, 2013

                                Respectfully submitted,


                                _____/s/_____
                                JAMES B. FISHMAN (jbf 8998)
                                FISHMAN & MALLON, LLP
                                305 Broadway Suite 900
                                New York, NY 10007
                                212 897-5840
                                *www.nyctenantslaw.com*

On the Memo:
James B. Fishman
Susan K. Crumiller