```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                             :
RAFAEL LEE,                                                  :
                                        Plaintiff,           :
                                                             :   12 Civ. 04662 (LGS)
             -against-                                       :
                                                             :   OPINION AND ORDER
KUCKER & BRUH, LLP and ALAN D.                               :
KUCKER,                                                      :
                                        Defendants.          :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

     Plaintiff Rafael Lee brings this action against debt collectors, Kucker & Bruh, LLP ("K&B") and Alan D. Kucker (together "Defendants"), alleging that they violated the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), by misrepresenting that Mr. Lee was delinquent in his rent obligations. Defendants move for summary judgment, arguing that they have not violated the FDCPA and, *arguendo*, asserting the bona fide error affirmative defense. Plaintiff cross-moves for partial summary judgment on liability, but not damages. Having considered the parties' written submissions and oral arguments, and for the reasons stated below, Defendants' motion is denied, and Plaintiff's motion is granted.

**I. Background Facts**

     The facts are taken from the parties' 56.1 Statements and are uncontested unless otherwise noted.

     Plaintiff Rafael Lee is an 82-year old man who has resided in his apartment in New York City since 1965. Mr. Lee's landlord, Woodfin Properties, Inc., retained Mall Properties, Inc. ("MPI"), as the managing agent for Mr. Lee's building.

Defendant K&B is a law firm that primarily represents landlords in New York City. K&B is a debt collector as defined by the FDCPA. 15 U.S.C. § 1692a(6). Defendant Alan D. Kucker is a partner at K&B. K&B first began to represent MPI in rent nonpayment cases in January 2012, approximately two months before the relevant events in this matter.

Mr. Lee's tenancy is governed by New York Rent Control Laws. Since at least 1995, Mr. Lee has had a Senior Citizen Rent Increase Exemption ("SCRIE"), issued by the New York City Department of Finance. The SCRIE program provides a rent subsidy to low income, elderly rent controlled or rent stabilized tenants whose income is below a statutory threshold. Under the program, eligible rent controlled and rent stabilized tenants are legally liable to pay only a portion of their lawful rent while the landlord receives a real estate tax abatement equal to the balance. Landlords may not collect any rent or other charges, including fuel charges, from a tenant beyond the amount permitted under the SCRIE program.

In March 2012, the legally collectible monthly, rent-controlled rent for Plaintiff's apartment was $790.30. Since at least 1995, Mr. Lee's SCRIE eligibility order fixed his monthly rent obligation at $400.72. On or about March 1, the Isaac H. Tuttle Fund, a private social service agency that provides social services assistance to elderly tenants, paid $400.72 to Mr. Lee's landlord on his behalf.

Notwithstanding the payment, Mr. Lee's landlord forwarded documents to K&B, which indicated that Mr. Lee was delinquent in his rent obligation. On March 14, 2012, MPI sent Defendants a copy of a document titled Aged Delinquency Report, dated March 14, 2012 ("Delinquency Report"), via email. The Delinquency Report showed that Mr. Lee had an overdue balance of $1,125.23 for amounts due from August 1, 2011 to March 1, 2012 -- consisting of $790.30 for March 2012 rent, $30.37 still owed for February 2012 rent and eight

months of fuel charges each for $38.07.  The Delinquency Report also showed that a payment of $400.72 was made into Mr. Lee's account on March 6, 2012, but did not show that it was credited against the $1,125.23 balance.

K&B prepared a statutory Three Day Notice, dated March 15, 2012 ("Three Day Notice"), listing the charges but not the payment from the Delinquency Report, and demanding payment of the $1,125.23.  The Three Day Notice warned Mr. Lee that the landlord would commence summary eviction proceedings to recover possession of his apartment if Mr. Lee did not pay the $1,125.23 within three days.  Defendant Kucker signed the Three Day Notice, and it was served on Mr. Lee on March 19, 2012.

On or around March 22, 2013, K&B asked MPI to confirm whether Mr. Lee had paid the amount demanded.  On around March 23, 2012, MPI forwarded K&B a one-page report that showed that the original $1,125.23 amount was still unpaid, and that Plaintiff's total outstanding balance had increased to $1,525.95 as of March 23, 2012.  There was no explanation as to why Mr. Lee's balance had increased, although it appears that MPI not only had failed to credit Mr. Lee with the March 6 $400.72 payment reflected on the Three Day Notice, but instead had added it to the amount owed.

On March 26, 2012, Defendants filed a Petition that commenced a summary eviction proceeding against Mr. Lee in New York City Housing Court alleging nonpayment of the $1,125.23 that had been set forth in the Three Day Notice.

Mr. Lee thereafter retained counsel.  On April 4, 2013, Mr. Lee's attorney sent Mr. Kucker an email disputing the validity and demanding verification of the debt, pursuant to 15 U.S.C. § 1692g.  The email did not explain how or why the alleged debt was invalid.  Mr. Kucker responded on the same day requesting that Mr. Lee's attorney not contact him by email.

On the same day, April 4, 2012, Mr. Lee's attorney also mailed K&B a written verified answer to the eviction proceeding asserting, *inter alia*, that Mr. Lee had a valid SCRIE and that his rent obligations had been met.

On April 6, 2012, presumably before receipt of Mr. Lee's answer, Defendants responded to Mr. Lee's demand for verification by sending a letter and a copy of the original Delinquency Report (the "Verification"). No one at K&B contacted MPI to seek additional information about Mr. Lee's debt before they responded to the request for verification.

Defendants requested that MPI confirm Mr. Lee's SCRIE status as soon as they learned of it from the verified answer. MPI confirmed that Mr. Lee indeed had a SCRIE, which when correctly applied resulted in Mr. Lee being current on his financial obligations. Defendant then sought to discontinue the summary eviction proceeding in housing court. Plaintiff consented to the discontinuance only with prejudice and with attorney's fees. The eviction proceeding was discontinued by court order on May 17, 2012, and Plaintiff's counsel was awarded attorney's fees. Mr. Lee initiated the case in this Court on June 14, 2012.

## II. Discussion

Plaintiff argues that Defendants violated § 1692e(2)(A) of the FDCPA by misrepresenting in the Three Day Notice, the Verification and the Petition for summary nonpayment eviction that Mr. Lee owed money for rent and fuel charges when in fact he did not. Defendants do not dispute the misstatements. However, they argue, first, that they cannot be liable under the FDCPA because they did not intend to misrepresent the amount of Mr. Lee's debt. Second, Defendants argue that they are shielded from liability by the bona fide error defense because the misrepresentation was a mistake.

**A. Legal Standard**

Summary judgment is appropriate only where the record before the court establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178–79 (2d Cir. 2008). Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B. Strict Liability under the FDCPA**

The FDCPA is designed to eliminate abusive debt collection practices, insure that debt collectors who refrain from using abusive collection practices are not competitively disadvantaged and promote consistent state action to protect consumers against debt collection abuses. *See* 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010). The FDCPA is remedial in nature and should be liberally construed. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Pursuant to 15 U.S.C. § 1692e, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute contains a non-exhaustive list of violations, several of which are asserted by Plaintiff. The most relevant is "[t]he false representation of the character, amount, or legal status of any debt." §

1692e(2)(A).  Proof of one violation is sufficient to support recovery under the statute.  *See* 15 U.S.C. § 1692k(a); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

It is well established that the FDCPA imposes strict liability on debt collectors.  Plaintiff need not prove that the prohibited conduct was intentional.  *See, e.g.*, *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."); *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir.1993) ("The FDCPA is a strict liability statute and the degree of a defendant's culpability may only be considered in computing damages" (citation omitted));  *accord Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1239 (5th Cir. 1997); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000).

Requiring a violation of § 1692e to be knowing or intentional would make superfluous a part of the statutory bona fide error defense (discussed in detail below), which requires a showing that the violation was not intentional as well as other elements.  *See* 15 U.S.C. § 1692k(c); *see also Clark v. Capital Credit & Collection Servs.*, *Inc.*, 460 F.3d 1162, 1174-76 (9th Cir. 2006).  Thus, as a matter of statutory interpretation, the fact that a violation was intentional is not a bar to liability.

Here there is no dispute that Defendants made a "false representation of the character, amount, [and] legal status of [Mr. Lee's] debt" within the meaning of § 1692e(2)(A).  Defendants argue that they are not liable for violating the FDCPA because they did not know

that they were misrepresenting that Mr. Lee's account was delinquent.[1]   This argument is contrary to binding Second Circuit precedent.  The Defendants here are strictly liable for their violation of § 1692e.  This Court holds that the misrepresentation in the Three Day Notice, the Verification and the Petition for summary nonpayment eviction of a debt supposedly owed by Mr. Lee for rent and fuel charges, when in fact he was current on his payments, is a violation of § 1692e(2)(A).

**C.  The Bona Fide Error Defense**

Defendants next argue that, as a matter of law, the Court should excuse their misrepresentation because it was a bona fide error, as defined in 15 U.S.C. § 1692k(c):

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

To avail itself of this defense, a defendant must prove:  *"*(1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) that [the defendant] maintained procedures reasonably adapted to avoid any such error." *Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139, 147 (D. Conn. 2012) (citing *Kort v. Diversified Collection Services*, 394 F.3d 530 (7th Cir. 2005)).  The procedures need not be "fool proof," but must constitute a "reasonable precaution" to avoid the error at issue. *Id.* at 148 (internal quotation and citation omitted).  The bona fide error defense is an affirmative defense, and the defendant bears the burden of proving its elements at trial by a preponderance of the evidence.

---

[1] Defendants rely on the decision in *Stonehart v. Rosenthal*, No. 01 Civ. 651, 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) (holding that to "state a claim under § 1692e(2) of the FDCPA, [the plaintiff] must show that [the debt collector] knowingly misrepresented the amount of the debt"), and similar district court cases inside and outside this circuit.  These cases, however, are at odds with binding Second Circuit precedent. S*ee also Goldman v. Cohen*, No. 01 Civ. 5952, 2004 WL 2937793, at *10, n.11 (S.D.N.Y. Dec. 17, 2004), *aff'd on other grounds*, 445 F.3d 152 (2d Cir. 2006) (concluding that analysis in *Stonehart* contradicts the plain language of 1692k(c) and the law as stated by the Second Circuit).

To survive summary judgment, a defendant must make a showing sufficient to establish the existence of, or at least a factual question as to, every element of the defense.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986).

In the present case, Defendants' intent is not in dispute.  Defendants represent that they did not knowingly misrepresent Plaintiff's debt, and there is no evidence in the record to the contrary.  Plaintiff conceded this point during oral argument.  Yet, a debt collector's benign intent is only part of what is required to maintain the bona fide error defense.  Defendants also must show that the misrepresentation was due to an error notwithstanding their maintaining procedures that were reasonably adapted to avoid this type of error.

> **i.    Defendants' Conduct**

The material facts concerning how K&B conducted its debt collection business, including the procedures it maintained to avoid error, are not in dispute.  However, the parties disagree on whether Defendants' conduct provides a basis for the bona fide error defense.

Defendants concede that they do not have any formal or written procedures, guidelines, or rules regarding the collection of debts.  When asked for an explanation of the procedures employed at K&B to avoid violating the FDPCA, Mr. Kucker stated that K&B relied on his law license and good standing with the bar to avoid committing errors:

> Q: And is it also your testimony that your firm, you and/or your firm had reasonable procedures that had been adopted to avoid the error?
>
> A: Yes.  It's called my law license.
>
> Q: What other reasonable procedures, if any, were adopted to avoid the error . . . ?
>
> A: I believe – I believe that as an attorney, since I am ethically mandated to understand the law, that my law license is – and my

> good standing in the bar . . . are reasonable procedures under the statute. . . .
>
> Q: So what specific procedures did you and your firm adopt to avoid violating the Fair Debt Collection Practices Act?
>
> A: … [T]he law firm is responsible for all its paralegals and its process servers, everything is under the auspices of the firm . . . I believe in this circumstance the difference between debt collectors who are not attorneys and debt collectors who are attorneys, because certainly whether I have a manual or I go listen to somebody lecture, it doesn't provide any greater obligation for my firm to have procedures to avoid errors in the litigation than my requirement that as attorneys we follow the law and don't violate it in the process.
>
> Q: So what specific procedures did you and your firm adopt to avoid violating the Fair Debt Collection Practices Act?
>
> A: I believe I answered the question.

In their 56.1 Statement, Defendants provided a more detailed explanation. K&B requires information regarding a tenant's nonpayment of past due rent to be in a written statement or printout prepared from records that the client maintains in the ordinary course of business. This information is forwarded to a legal assistant, who prepares a statutory three day rent demand, which is served on the tenant. At the end of the three day notice period, K&B confirms with the client whether the past due rent has been paid. It is undisputed that Defendants do nothing to confirm the accuracy of the information received from the landlord. It also should be noted that in this case, the creditor MPI had established no track record of reliability with Defendants. MPI was a new client and had been referring collection matters to K&B only for a couple of months, since early 2012.

In this case, Defendants received documents from their client that on their face raised questions about the accuracy of the amount owed. Defendants had no procedures to identify obvious anomalies or to seek clarification about them once identified. On March 1, 2012,

Defendants issued the Delinquency Report to Mr. Lee, demanding payment of $1,125.23. The Delinquency Report showed charges through March 1, 2012, but no application of a subsequent March 6 payment to the charges. Nevertheless, Defendants made no effort to determine from MPI or anyone else whether or how the March 6, 2012 payment had been applied. When asked at his deposition if he considered asking for an explanation concerning the payment of $400.72 to Mr. Lee's account on March 6, 2012, Mr. Kucker stated: "It did not occur to me to ask the client nor did I believe it was my responsibility to do so." In addition, Defendants made no effort to understand the later report from MPI, which showed that between March 14 and 22, 2013, Mr. Lee's debt supposedly increased from $1,125.23 to $1,525.95. The increase of $400.72 apparently was the result of an arithmetic error – adding instead of subtracting the March 6 rent payment to the total amount due.

In sum, Defendants' had a single procedure to enhance the reliability of information received from the landlord – requiring a business record reflecting the debt, akin to the business records exception to the hearsay rule. However, Defendants had no procedures to identify and resolve potential errors that were evident from the client's documents.

  **ii.  Discoverable Errors**

The Second Circuit has not addressed, for purposes of the bona fide error defense, what procedures might be sufficient to avoid liability for reliance on a client's erroneous information. In this case there is no need to address the more difficult situation where the client's information is incorrect, but nevertheless seemingly proper.[2] Here, MPI's information was suspect on its face, and Defendants had no procedures to identify or resolve the possible errors. The Ninth and

---

[2] The Court, however, notes that the statute places the burden on the debt collector to avoid collecting debt improperly, including attempting to collect debt that is not actually owed. A debt collector's reliance on unverified information from the client, without more, is particularly problematic in the landlord-tenant context, where tenants risk not only damage to their credit, but possible loss of their homes as a result of misstatements of debt owed, and where landlords might profit from evicting tenants who pay below market rent.

Eleventh Circuits both have held that, "[t]o qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors, including, but not limited to, errors in calculation and itemization." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) (affirming summary judgment in favor of plaintiff); *accord McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1276-77 (11th Cir. 2011).

In *McCollough*, the Ninth Circuit affirmed the district court's grant of summary judgment to the plaintiff on the ground that the defendant's bona fide error defense failed as a matter of law. 637 F.3d at 948. The court held that the defendant "erred by relying without verification on [its client's] representation and by overlooking contrary information in its electronic file." The court concluded that defendant "thus presented no evidence of procedures designed to avoid the specific errors that led to its filing and maintenance of a time-barred collection suit . . . . Unwarranted reliance on a client is not a procedure to avoid error, [and defendant's] reliance on [its client's] email was unreasonable as a matter of law." *Id.* at 948-49.

The Eleventh Circuit recently reversed a district court's decision granting summary judgment to defendant, and remanded with instructions to enter summary judgment on the bona fide error defense for plaintiff, where the defendant "indiscriminately accepted [its client's improper] interest charges as factually accurate and proceeded to collect them." *Owen*, 629 F.3d at 1278. A key fact was that "the errors were discernible on the face of [the client's] documents forwarded to [defendant] and therefore readily discoverable . . . ." The *Owen* court held that "to qualify for the bona fide error defense, the debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid readily discoverable errors . . . ." *Id*. at

11

1277.  Because the defendant had no "internal, error-correction procedures to avoid miscalculations of debt amount," the court reversed.  *Id.* at 1276.

Where courts have found a debt collector's procedures sufficed to entitle it to the bona fide error defense, the procedures have been significantly more formal than those employed at K&B.  For example, in *Puglisi v. Debt Recovery Solutions, LLC*, 822 F. Supp.2d 218, 228 (E.D.N.Y. 2011), the court found that the defendant's compliance procedures – "including written procedures in the form of a Company Manual and a Training Manual, specific classroom training for compliance with the FDCPA and State law issues, employee examinations, review of communications, mentoring by the senior-most collectors, and various seminars and training programs as part of defendant's membership in its trade association" – were sufficient to entitle it to the bona fide error defense in that case.  *See also Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997) (finding procedures reasonable to establish bona fide error where debt collectors required that the creditor client verify under oath that each charge was accurate, published a fair debt compliance manual, trained its employees, and used an eight-step, highly detailed pre-litigation review process to ensure accuracy and review the work of its employees).

### iii.    Absence of Procedures

Defendants had no procedures designed to avoid discoverable errors in their client's computation of the amount due.  Their sole procedure was to rely blindly on their client's business record maintained in the regular course of business.  The Court need not reach the question of what procedures might have been adequate, as well as practical under the circumstances, to avoid liability for the error that occurred here, such as asking the client to verify in writing whether a tenant received a SCRIE or another form of rent subsidy, providing training and protocols for document examiners to detect irregularities, or maintaining procedures

for employees to follow up with the client when the information provided is questionable.  While the court makes no finding of what procedures would have been sufficient, the absence of any procedure to avoid discoverable errors clearly is insufficient.

On the undisputed facts, Defendant cannot satisfy the third prong of the bona fide error defense.  No reasonable jury could conclude that Defendants' procedures were reasonably designed to avoid the type of error that occurred in this case.  *Cf. Bell v. Bowman, Heintz, Boscia & Vician, P.C.*, 370 F. Supp.2d 805 (S.D. Ind. 2005) (denying cross motions for summary judgment because there was a question of fact as to whether debt collection letters contained an error, and whether defendant's reliance on creditor established procedures reasonably adapted to avoid errors for purposes of the bona fide error defense).

### III. Conclusion

There is no dispute that the Defendants misrepresented the character, amount and legal status of Mr. Lee's debt.  Therefore they have violated § 1692e(2)(A) of the FDCPA.  Because Defendants lacked procedures reasonably adapted to avoid the error, the bona fide error defense of § 1692k(c) does not apply.  Accordingly, Defendants' motion for summary judgment is DENIED.  Plaintiff's motion for partial summary judgment is GRANTED with respect to the violation of § 1692e(2)(A).  Plaintiff's remaining claims are dismissed as moot.  The issue of damages remains for trial.

The Clerk of Court is directed to close the motions at docket numbers 37 and 41.

SO ORDERED.

Dated: August 2, 2013
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE